# WINSTEAD

Austin | Charlotte | Dallas | Fort Worth | Houston | San Antonio | The Woodlands | Washington, D.C.

| | |
|---|---|
| 5400 Renaissance Tower | 214.745.5400 OFFICE |
| 1201 Elm Street | 214.745.5390 FAX |
| Dallas, Texas 75270 | winstead.com |

April 8, 2011

Direct Dial: 214/745-5302
jlivingston@winstead.com

TCI Park West II, Inc.                          CERTIFIED MAIL
1800 Valley View Lane, Suite 300      RETURN RECEIPT REQUESTED
Dallas, Texas 75234                          NO. 7160 3901 9849 2806 6571
Attn: Monte R. Koch                              and First Class Mail

Income Opportunity Realty Investors, Inc. and      CERTIFIED MAIL
Transcontinental Realty Investors, Inc.      RETURN RECEIPT REQUESTED
1800 Valley View Lane, Suite 300                NO. 7160 3901 9849 2806 6588
Dallas, Texas 75234                                  and First Class Mail
Attention: Monte R. Koch

TCI Park West II, Inc.                          CERTIFIED MAIL
1800 Valley View Lane, Suite 300      RETURN RECEIPT REQUESTED
Dallas, Texas 75234                          NO. 7160 3901 9849 2806 6595
Attn: Mr. R. Rhys Heinsch                      and First Class Mail

Income Opportunity Realty Investors, Inc. and      CERTIFIED MAIL
Transcontinental Realty Investors, Inc.      RETURN RECEIPT REQUESTED
1800 Valley View Lane, Suite 300                NO. 7160 3901 9849 2806 6601
Dallas, Texas 75234                                  and First Class Mail
Attention: Mr. R. Rhys Heinsch

FRE Real Estate, Inc.                          CERTIFIED MAIL
1800 Valley View Lane, Suite 300      RETURN RECEIPT REQUESTED
Dallas, Texas 75234                          NO. 7160 3901 9849 2806 6618
Attention: Richard D. Morgan

Re:    Indebtedness (the "Indebtedness" or "Loan") evidenced by that certain Promissory
       Note (as same may have been heretofore amended, restated, replaced or
       supplemented, in whole or in part, the "Note") dated January 19, 2007 in the
       original principal amount of $62,000,000.00, executed by TCI PARK WEST II,
       INC., a Nevada corporation, now known as FRE Real Estate, Inc., and formerly
       known as Fenton Real Estate, Inc. ("Borrower"), payable to the order of
       NEXBANK SSB ("Original Payee"), which Note is secured by (i) that certain
       Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture

TCI Park West II, Inc., FRE Real Estate, Inc., et. al.
April 8, 2011
Page 2

Filing (as same may have been heretofore amended, the "Primary Deed of Trust"), dated of even date with the Note, from Borrower to Howard E. Schreiber, Trustee, recorded as Document Number 20070030341 of the Real Property Records of Dallas County, Texas, covering certain property described therein (the "Primary Property"), and further secured by (ii) that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (as same may have been amended, extended, renewed or restated, the "Additional Deed of Trust") dated May 1, 2009, executed by INCOME OPPORTUNITY REALTY INVESTORS, INC., and TRANSCONTINENTAL REALTY INVESTORS, INC. (collectively, the "Additional Mortgagor"), for the benefit of KEYCORP REAL ESTATE CAPITAL MARKETS, INC., as agent (in such capacity, the "Mortgage Servicer") for the benefit of the lenders (collectively, the "Lender") from time to time a party to that certain Loan Agreement ("Loan Agreement") dated January 19, 2007 between Borrower and Nexbank, SSB, as a lender and as Agent, recorded as Document No. 200900126637, Real Property Records, Dallas County, Texas, covering the real and other property described therein (collectively, "Additional Property")

Ladies and Gentlemen:

Please be advised that this firm represents Highland Capital Management, LP, a Delaware limited partnership ("Special Servicer") with respect to the Indebtedness on behalf of the Lender, as the current owners and holders of the Note, acting for Mortgage Servicer pursuant to, *inter alia*, that certain Loan/CDO Servicing Agreement dated December 20, 2006 among Highland Capital Management, L.P., Highland Park CDO I, Ltd., KeyCorp Real Estate Capital Markets, Inc. and the Bank of New York, and with respect to the Primary Deed of Trust and as beneficiary under the Additional Deed of Trust.

Pursuant to the letter dated October 6, 2010 from this firm to the addresses of this letter, the Note was accelerated and all indebtedness due under the Note is fully due and payable, but Borrower has failed and continues to fail to pay all such indebtedness. As a result, Borrower has been and remains in default under the terms of the Note, the Primary Deed of Trust and the Additional Deed of Trust. In addition, Borrower previously received notice of Special Servicer's demand for payment of all amounts due and owing under the terms of the Note, the Primary Deed of Trust and the Additional Deed of Trust, and of Special Servicer's intent to enforce all remedies available under the Note, the Primary Deed of Trust or the Additional Deed of Trust or at law upon Borrower's failure to pay all such amounts as demanded.

Demand is hereby made that Borrower immediately pay to Mortgage Servicer all amounts due and owing under the Note, the Primary Deed of Trust and the Additional Deed of Trust. You may contact Brandon Solt with the Master Servicer at 816-204-2282, or Kurt Daum with the Special Servicer at 972-419-4414, to get the exact amount due for full payment as of any date. Borrower is liable not only for the outstanding principal balance of the Note and (to

TCI Park West II, Inc., FRE Real Estate, Inc., et. al.
April 8, 2011
Page 3

the extent lawful) accrued and unpaid interest, but Borrower is also liable for attorneys' fees, and such other sums, costs and expenses as are incurred by Special Servicer in connection with the collection of the indebtedness evidenced by the Note and the foreclosure as provided in the Note and the Primary Deed of Trust and the Additional Deed of Trust to the extent allowed under applicable law.  In the event the Primary Property and the Additional Property secured by the Primary Deed of Trust and the Additional Deed of Trust are sold at foreclosure for an amount insufficient to satisfy the entire unpaid balance of principal and accrued interest, attorney's fees, and expenses incurred in connection with the foreclosure, Borrower will be liable for the deficiency.

Enclosed is a copy of each of the Notice of Substitute Trustee's Sale ("Primary Notice") covering the Primary Property and the Notice of Substitute Trustee's Sale ("Additional Notice") covering the Additional Property.  The Primary Notice and the Additional Notice were posted today at the courthouse door of Dallas County, Texas, and a copy of the Primary Notice and Additional Notice were filed in the office of the County Clerk of Dallas County, Texas.  The sale specified in the Primary Notice and the Additional Notice will take place as specified in the Primary Notice and the Additional Notice, as authorized by the Primary Deed of Trust and the Additional Deed of Trust and/or applicable law.  Regardless of any prior Notices of Substitute Trustee's Sales providing any other dates to the contrary (which notices, if any, are expressly superceded hereby), Borrower is hereby advised that such property will be sold as provided in the Primary Notice and the Additional Notice.

The Primary Property and the Additional Property will be sold to the highest bidder for cash and in accordance with the requirements of the Primary Deed of Trust and the Additional Deed of Trust and applicable law.  Please refer to the Primary Notice and the Additional Notice for additional information regarding the sale.  In the event of any inconsistency between the Primary Notice and the Additional Notice and anything contained herein, the Primary Notice and the Additional Notice will govern.

By copy hereof, Transcontinental Realty Investors, Inc. ("Guarantor"), as guarantor, is hereby advised of such acceleration of such indebtedness and the aforesaid default and this letter constitutes formal demand on such Guarantor to cure such default by payment of such indebtedness as provided in the Guaranty Agreement dated January 19, 2007 relating to the Note.

Borrower is hereby advised that as a result of the default under the Deed of Trust, Mortgage Servicer, on behalf of Mortgagee, has revoked Borrower's license pursuant to Section 10.1 of the Primary Deed of Trust and the Additional Deed of Trust to collect and receive Rents (as defined in the Deed of Trust).  Accordingly, Mortgage Servicer, on behalf of Mortgagee, hereby demands that Borrower pay over to Mortgage Servicer all Rents received by Borrower immediately upon receipt thereof by Borrower.

The actions herein specified are allowed pursuant to (i) that certain Order Granting Motions to Dismiss of Wells Fargo Capital Finance, Inc. and Armed Forces Bank, N.A., dated

TCI Park West II, Inc., FRE Real Estate, Inc., et. al.
April 8, 2011
Page 4

March 1, 2011, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 11-30210-bjh11, Chapter 11, whereby the first bankruptcy case of Mortgagor was dismissed, and (ii) that certain Order Granting Motion Seeking Emergency Stay Consideration dated April 8, 2011, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 11-42042-DML-11, Chapter 11, whereby the automatic stay in the second bankruptcy case was modified to permit posting for foreclosure, provided that no further action shall be taken to foreclose absent further order of the court.

It is the intention of the Special Servicer to comply strictly with all bankruptcy laws. According to the files of the Special Servicer, there is no formal notice or other indication of any pending bankruptcy proceeding affecting the Primary Property or Additional Property or any person or entity obligated to pay the debt evidenced by the Note. If any recipient of this letter is a debtor in a bankruptcy proceeding subject to the provisions of the United States Bankruptcy Code, this letter is intended merely as written notice (i) of the existence of the aforesaid default, (ii) to non-debtors in bankruptcy of the rights and remedies available to Mortgage Servicer and Special Servicer, on behalf of the Lenders, with respect to the Loan evidenced by the Note and secured by the Primary Deed of Trust and Additional Deed of Trust. As to parties subject to a proceeding under the United States Bankruptcy Code, this letter is not an act to collect, assess or recover a claim against a debtor in bankruptcy, nor is it intended to violate any provision of such Bankruptcy Code. Please advise us immediately if any such bankruptcy proceedings are pending.

If you have any questions, do not hesitate to contact the undersigned at the direct dial telephone number referred to above.

Sincerely,

WINSTEAD PC

By: _____

Jeffrey D. Livingston

cc: Shamoun Klatsky Norman, LLP  CERTIFIED MAIL
  1755 Wittington Place, Suite 200  RETURN RECEIPT REQUESTED
  Dallas, Texas 75234    NO. 7160 3901 9849 2806 6625
  Attn: Brian K. Norman, Esq.  (Copy via First Class Mail)

  Transcontinental Realty Investors, Inc. CERTIFIED MAIL
  1800 Valley View Lane, Suite 300  RETURN RECEIPT REQUESTED
  Dallas, Texas 75234    NO. 7160 3901 9849 2806 6632
           (Copy via First Class Mail)

TCI Park West II, Inc., FRE Real Estate, Inc., et. al.
April 8, 2011
Page 5

Bennett, Weston, LaJone &
Turner, P.C.
1750 Valley View Lane
Suite 120
Dallas, Texas 75234
Attn: Jay A. LaJone, Esq.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
NO. 7160 3901 9849 2806 6649
(Copy via email)

Shamoun & Norman, LLP
1755 Wittington Place
Suite 200, LB 25
Dallas, Texas 75234

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7160 3901 9849 2806 6656

Douglas J. Buncher
Neligan Foley, LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7160 3901 9849 2806 6663

Robert A. Simon, Esq.
Barlow Garsek & Simon, LLP
3815 Lisbon Street
Fort Worth, Texas 76107

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7160 3901 9849 1576 9003

Mr. Ted Dameris (via email)
Mr. Kurt Daum (via email)
Mr. Grant Smith (via email)
Mr. Brandon Solt (via email)
J. Richard White (*of the firm*)



4-7-11
46502-5
[Primary Property]

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF TEXAS    §
                  §    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS  §

WHEREAS, TCI PARK WEST II, INC., a Nevada corporation, now known as FRE Real Estate, Inc. ("Mortgagor"), executed and delivered to Howard E. Schreiber, Trustee (the "Original Trustee") for the benefit of NEXBANK SSB, a Texas state savings bank, as agent (in such capacity, "Agent") for the benefit of Agent and the other lenders (collectively, the "Lender") from time to time a party to that certain Loan Agreement ("Loan Agreement") dated January 19, 2007 between Nexbank, SSB, as a lender and as Agent, and Mortgagor, that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (as same may have been heretofore extended, renewed, modified and/or restated, the "Deed of Trust"), dated January 19, 2007, recorded as Document No. 20070030341, Real Property Records, Dallas County, Texas, to secure that certain Promissory Note (as same may have been heretofore extended, renewed, modified and/or restated, the "Note") dated of even date with the Deed of Trust, in the principal sum of $62,000,000.00, executed by Mortgagor and payable to NEXBANK SSB (in such capacity, the "Original Payee"), and all other indebtedness, liabilities, and obligations (collectively, the "Indebtedness") described in the Note and Deed of Trust; and

WHEREAS, the rights, titles and interests of Original Payee in and to the Note and the Deed of Trust and other documents relating thereto have been assigned numerous times and to the following parties, who are, collectively, the current beneficiary under the Deed of Trust (all of such parties in such capacity are referred to, collectively as, the "Mortgagee"): Liberty CLO, Ltd., Brentwood CLO, Ltd., Eastland CLO, Ltd., Gleneagles CLO, Ltd., Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Park CDO I Grantor Trust, Series A (the "Highland Park CDO Trust"), Jasper CLO, Ltd., Highland Park CDO I, Ltd., and Nexbank, SSB; and

WHEREAS, pursuant to Section 9.1 of the Loan Agreement, Mortgagee has granted to Agent the authority to administer and service the Note and the Deed of Trust; and

WHEREAS, pursuant to Section 3 of that certain Form of Assignment and Acceptance Agreement ("Foothill Assignment") dated January 19, 2007, executed by Original Payee, as assignor, and The Foothill Group, Inc. ("Foothill"), as assignee, Foothill appointed and authorized Agent to act as agent on behalf of Foothill in connection with Note, the Deed of Trust and the other Loan Documents (as defined in the Foothill Assignment); and

WHEREAS, pursuant to Section 3.10 of that certain Assignment and Assumption Agreement (the "Grantor Trust Assignment") dated May 18, 2007, between Foothill, as assignor, and Highland Park CDO Trust, as assignee, and Agent, as agent, and in accordance with Section 12.21 of the Deed of Trust, Foothill, Agent and Highland Park CDO Trust agreed that Highland Park CDO Trust or its designee would administer and service the Loan on behalf of Agent consistent with the terms of the Servicing Agreement (as hereinafter defined), the Loan Agreement, and applicable law; and

WHEREAS, in accordance with the Servicing Agreement (as hereinafter defined) Highland Park CDO Trust has delegated the administration and servicing of the Note and Deed of Trust to KEYCORP REAL ESTATE CAPITAL MARKETS, INC., an Ohio corporation ("Mortgage Servicer"), with an address of 911 Main Street, Suite 1500, Kansas City, Missouri 64105; and

WHEREAS, that certain Loan/CDO Servicing Agreement ("Servicing Agreement") dated as of December 20, 2006 was executed by Highland Park CDO I, Ltd., as the Issuer, Mortgage Servicer, as the Master Servicer, Highland Capital Management, L.P., a Delaware limited partnership, as the HP CDO I Collateral Servicer and as Special Loan/CDO Servicer ("Special Servicer"), and The Bank of New York, a New York banking corporation, as the Back-Up Loan/CDO Servicer, pursuant to which the authority to service the Note and the Deed of Trust was granted to Mortgage Servicer and Special Servicer; and

WHEREAS, Mortgagee and Agent have executed that certain Ratification and Adoption Agreement ("Ratification Agreement") dated December 1, 2010, whereby Mortgagee and Agent acknowledged, confirmed, ratified and adopted all actions taken by Agent, Highland Park CDO Trust, Master Servicer and Special Servicer in connection with the administration and servicing of the Note, the Deed of Trust and the other Loan Documents (as defined in the Ratification Agreement);

WHEREAS, Special Servicer, with an address of Two Galleria Tower, 13455 Noel Road, Suite 800, Dallas, Texas 75240, pursuant to its responsibilities under the Servicing Agreement, has advised Mortgage Servicer in respect of the matters addressed herein; and

WHEREAS, the Mortgage Servicer is the last person to whom Mortgagor has been instructed by Mortgagee to send payments for the Indebtedness evidenced by the Note and secured by the Deed of Trust, and is representing the Mortgagee, as the beneficiary under the Deed of Trust, with respect to the administering of the foreclosure of the Mortgaged Property (as hereinafter defined) as contemplated herein and pursuant to the Deed of Trust; and

WHEREAS, pursuant to and in accordance with the terms and conditions of the Deed of Trust, Mortgage Servicer, on behalf of Mortgagee, has heretofore appointed J. RICHARD WHITE, JEFFREY D. LIVINGSTON and SHERRY A. BALDWIN, each an individual residing in Dallas County, Texas and each with a street address of 5400 Renaissance Tower, 1201 Elm Street, Dallas, Texas 75270, individually and severally, and not jointly (collectively, the "Substitute Trustees" or, severally, a "Substitute Trustee"), each of whom may act alone, without the necessity of the joinder of the other Substitute Trustees, as the substitute trustees, in the place and stead of and to succeed to all of the rights, titles, estates, powers, privileges and authorities granted in the Deed of Trust to the Original Trustee; and

WHEREAS, to secure the Indebtedness, the Deed of Trust created a lien on, among other things, certain real property (the "Land") situated in Dallas County, Texas, as more particularly described on Exhibit A hereto; and

WHEREAS, further to secure the Indebtedness, the Deed of Trust also created a lien and security interest in favor of Mortgagee in certain other collateral located on or related to the Land

as more particularly described on Exhibit B hereto (collectively, the "Other Collateral") (the Land and the Other Collateral being herein collectively called the "Mortgaged Property"); and

WHEREAS, a default has occurred in the payment of the Indebtedness evidenced by the Note and Deed of Trust (as heretofore modified) and the same has been accelerated and is now wholly due and payable; and

WHEREAS, Special Servicer, on behalf of Mortgage Servicer, on behalf of Mortgagee, has made demand upon Mortgagor to pay to Mortgage Servicer, on behalf of Mortgagee, the Indebtedness now due, but such Indebtedness has not been paid; and

WHEREAS, the actions herein specified are allowed pursuant to (i) that certain Order Granting Motions to Dismiss of Wells Fargo Capital Finance, Inc. and Armed Forces Bank, N.A., dated March 1, 2011, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 11-30210-bjh11, Chapter 11, whereby the first bankruptcy case of Mortgagor was dismissed, and (ii) that certain Order Granting Motion Seeking Emergency Stay Consideration dated April 8, 2011, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 11-42042-DML-11, Chapter 11, whereby the automatic stay in the second bankruptcy case was modified to permit posting for foreclosure, provided that no further action shall be taken to foreclose absent further order of the court; and

WHEREAS, Mortgage Servicer, on behalf of Mortgagee, as the holder and owner of the Note and Indebtedness, has instructed the Substitute Trustees or any one of them, acting alone without the necessity of the joinder of the other Substitute Trustees to post, file and mail appropriate notice and to sell the Mortgaged Property to satisfy, in whole or in part, the unpaid Indebtedness.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on Tuesday, May 3, 2011, no earlier than 10 a.m., or no later than three hours after that time, the Substitute Trustees or any one of them, acting alone without the necessity of the joinder of the other Substitute Trustees will commence the sale of the Mortgaged Property, in parcels or as a whole, at public auction to the highest bidder for cash pursuant to the Deed of Trust and applicable law; such sale will be held at the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang, Dallas, Dallas County, Texas, which area was designated by the Commissioner's Court of said County; SUBJECT, HOWEVER, to all liens, exceptions to title, easements, restrictions, and encumbrances affecting any of the Mortgaged Property or title thereto which are equal or prior to the lien and security interest created by the Deed of Trust, and further subject to any and all leases covering all or any part of the Mortgaged Property to which the Deed of Trust is now or may prior to such sale be subordinated. The Substitute Trustee's sale will occur between the earliest time to begin the sale as specified above and 4:00 p.m.

If such sales do not result in full satisfaction of all of the Indebtedness now due, the lien and security interest of the Deed of Trust shall remain in full force and effect in respect of any of the Mortgaged Property not so sold and any and all other types of real and personal property covered by the Deed of Trust and not described herein.

IN WITNESS WHEREOF, the Substitute Trustee has signed this notice as of April 8, 2011.

[The remainder of this page is intentionally left blank.]

**SUBSTITUTE TRUSTEE:**

Name:  Jeffrey D. Livingston

STATE OF TEXAS       §

                               §

COUNTY OF DALLAS    §

       This instrument was ACKNOWLEDGED before me on April 8, 2011, by Jeffrey D. Livingston, in the capacity therein stated.

[S E A L]

Notary Public in and for the State of Texas



Printed Name of Notary Public

NATALIE M. BLANKENSHIP
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 08-16-2013

# EXHIBIT A

## Land

The description of the Land follows this cover page.

04-13-09
46502-5
Park West II

## EXHIBIT "A"

### Legal Description

### TRACT 1: (Lot 2, Block 1):

BEING a tract of land in the William P. Shahan Survey, Abstract No. 1337, and the Samuel P. Brown Survey, Abstract No. 158, Dallas County, Texas, and being a part of that tract of land described in deed to Prentiss Properties Acquisition Partners, L.P., as recorded in Volume 2004100, Page 5411, Deed Records of Dallas County, Texas, (DRDCT), and being all of Lot 2, Block 1 of Lot 1, Lot 2, Lot 3, and Lot 4, Block 1, Park West Phase II, an Addition to the City of Farmers Branch, as recorded in Volume 85186, Page 3424, DRDCT, and being more particularly described as follows:

COMMENCING at a 1/2-inch iron rod with a yellow plastic cap stamped "Halff Assoc., Inc." (hereafter referred to as "with cap") found at the southwest corner of a 25 foot corner clip located at the intersection of the north right-of-way line of Interstate Highway 635 (a variable width right-of-way) and the west right-of-way line of Luna Road (a variable width right-of-way);

THENCE North 87 degrees 17 minutes 03 seconds West, along said north right-of-way line, a distance of 350.33 feet to a 1/2-inch iron rod with cap found for the POINT OF BEGINNING of the herein described tract, and being the southeast corner of said Lot 2;

THENCE North 87 degrees 17 minutes 03 seconds West, continuing along said north right-of-way line, a distance of 590.42 feet to a 1/2-inch iron rod with cap found for corner, said point being the southwest corner of said Lot 2 Block 1 and also being the southeast corner of Lot 3, Block 1 of Revised Final Plat Park West-Phase II, an addition to the City of Farmers Branch, as recorded in Volume 89157, Page 0043, DRDCT;

THENCE North 02 degrees 31 minutes 30 seconds West, departing said north right-of-way line and along common line between said Lot 2, Block 1 and Lot 3, Block 1, a distance of 341.69 feet to an "X" found in concrete for corner, said point being the northwest corner of said Lot 2 Block 1;

THENCE North 87 degrees 45 minutes East, departing said common line and along the north line of Lot 2, passing at a distance of 30.00 feet an "X" found in the concrete for a angle point in the south line of Lot 1 of said Block 1, and continuing along the common line between said Lot 1, Block and Lot 2, Block 1, in all a distance of 528.07 feet to a 1/2-inch iron rod with cap found for corner;

THENCE South 02 degrees 15 minutes 00 seconds East, continuing along said common line, a distance of 185.00 feet to a 1/2-inch iron rod with cap found for corner;

THENCE South 57 degrees 15 minutes 00 seconds East, continuing along said common line, a distance of 91.87 feet to a 1/2-inch iron rod with cap found for corner;

EXHIBIT A, Legal Description – Page 1

THENCE South 02 degrees 42 minutes 57 seconds West, continuing along said common line, a distance of 155.69 feet to the POINT OF BEGINNING AND CONTAINING 204,638 square feet or 4.70 acres of land, more or less.

### TRACT 2-(Lot 4, Block 1 -SITE C-3):

BEING a tract of land location in the Samuel P. Brown Survey, Abstract No. 158, and the James F. Chenoeth Survey, Abstract No. 267, in the City of Farmers Branch, Dallas County, Texas, and being all of that tract of land described in deed to Prentiss Properties Acquisition Partners, L.P., as recorded in Volume 2003023, Page 12963, Deed Records, Dallas County. Texas, (D.R.D.C.T.), and being all of Lot 4, Block 1, of Lot 1, Lot 2, Lot 3 and Lot 4, Block 1, Park West-Phase II, an addition to the City of Farmers Branch, as filed for record in Volume 85186, Page 3424, D.R.D.C.T., and being more particularly described as follows:

COMMENCING at a 1/2 inch iron rod with a yellow plastic cap stamped "Halff Assoc. Inc." (hereafter referred to as "with cap") found at the southwest corner of a 25 foot corner clip located at the intersection of the North right-of-way line of Interstate Highway 635 (a variable width right-of-way) and the West right-of-way line of Luna Road (a variable width right-of-way);

THENCE the following bearings and distances along said North right-of-way line of Interstate Highway 635;

North 87 degrees 17 minutes 03 seconds West, a distance of 1064.89 feet to a 1/2 inch iron rod with cap found for corner;

North 79 degrees 04 minutes 16 seconds West, a distance of 485.05 feet to a 1/2 inch iron rod with cap found for the Southeast corner of said Lot 4, Block 1, and the POINT OF BEGINNING of the herein described tract;

THENCE North 79 degrees 04 minutes 16 seconds West, continuing along said North right-of-way, a distance of 646.23 feet to a 1/2-inch iron rod with cap found for corner;

THENCE North 01 degree 24 minutes 22 seconds East, departing said North right-of-way line, a distance of 426.66 feet to a 1/2-inch iron rod found for corner;

THENCE North 88 degrees 25 minutes 23 seconds East, a distance of 608.69 feet to a point for a corner from which a found 'X' in a curb bears South 01 degree 34 minutes 37 seconds East, a distance of 29.03;

THENCE South 01 degree 34 minutes 37 seconds East, a distance of 566.01 feet to the POINT FO BEGINNING AND CONTAINING 308,222 square feet or 7.076 acres of land, more or less.

EXHIBIT A, Legal Description – Page 2

## TRACT 3- (Lot 3, Block 1 - SITE C-2):

BEING a tract of land located in the Samual P. Brown Survey, Abstract No. 158 and the James F. Chenoeth Survey, Abstract No. 267, in the City of Farmers Branch, Dallas County, Texas, and being that tract of land described in Substitute Trustee's Deed to PL Properties Associates, L.P., as recorded in Volume 95173, Page 6931, Deed Records of Dallas County, Texas (D.R.D.C.T.), and also being all of Lot 3, Block 1, Revised Park West - Phase II Addition, an addition to the City of Farmers Branch, Dallas County, Texas, as recorded in Volume 89157, Page 0043, D.R.D.C.T., and being more particularly described as follows:

COMMENCING at a 1/2 inch iron rod with a yellow plastic cap stamped "Halff Assoc. Inc." (hereafter referred to as "with cap") found at the southwest corner of a 25 foot corner clip located at the intersection of the North right-of-way line of Interstate Highway 635 (a variable width right-of-way) and the West right-of-way line of Luna Road (a variable width right-of-way);

THENCE North 87 degrees 17 minutes 03 seconds West, along said north right-of-way line of Interstate Highway 635, a distance of 940.75 feet to a 1/2-inch iron rod with cap found for corner, said corner being the southeast corner of Lot 3, and the POINT OF BEGINNING of the herein described tract;

THENCE North 87 degrees 17 minutes 03 seconds West, continuing along said north right-of-way line, a distance of 124.14 feet to a 1/2-inch iron rod with cap found for a corner;

THENCE North 79 degrees 04 minutes 16 seconds West continuing along said north right-of-way line, a distance of 485.05 feet to a 1/2-inch iron rod with cap found for a corner, said corner also being the southwest corner of Lot 3;

THENCE North 01 degree 34 minutes 37 seconds West, departing said north right-of-way line and along the west line of Lot 3, a distance of 566.01 feet to a point for corner from which a found "X" in a curb bears South 01 degree 34 minutes 37 seconds East, a distance of 29.03 feet;

THENCE North 88 degrees 25 minutes 23 seconds East, along the north line of Lot 3, a distance of 616.07 feet to a 1/2-inch iron rod with cap stamped "Yandell & Hiller" found for corner;

THENCE South 02 degrees 31 minutes 30 seconds East, a distance of 338.38 feet to a found "X" in concrete pavement for corner;

THENCE South 87 degrees 45 minutes 00 seconds West, a distance of 30.00 feet to a found "X" in concrete pavement for a corner;

THENCE South 02 degrees 31 minutes 30 seconds East, a distance of 341.69 feet to the POINT OF BEGINNING AND CONTAINING 382,867 square feet of 8.789 acres of land, more or less.

EXHIBIT A, Legal Description – Page 3

**Tract 4: (Lot 1, Block 1):**

BEING a tract of land in the James F. Chenoeth Survey, Abstract No. 267, the William P. Shahan Survey, Abstract No. 1337, and the Samuel P. Brown Survey, Abstract No. 158, Dallas County, Texas, and being a part of that tract of land described in deed to Prentiss Properties Acquisition Partners, L.P., as recorded in Volume 2004100, Page 5411, Deed Records of Dallas County, Texas, (DRDCT), and being all of Lot 1, Block 1 of Lot 1, Lot 2, Lot 3, and Lot 4, Block 1, Park West Phase II, an Addition to the City of Farmers Branch, as recorded in Volume 85186, Page 3424, DRDCT, and being more particularly described as follows:

BEGINNING at a 1/2-inch iron rod with a yellow plastic cap stamped "Halff Assoc., Inc." (hereafter referred to as "with cap") found at the southwest corner of a 25 foot corner clip located at the intersection of the north right-of-way line of Interstate Highway 635 (a variable width right-of-way) and the west right-of-way line of Luna Road (a variable width right-of-way);

THENCE North 87 degrees 17 minutes 03 seconds West, along said north right-of-way line, a distance of 350.33 feet to a 1/2-inch iron rod with cap found for corner, said point also being the southwest corner of said Lot 1, said point also being the southeast corner of Lot 2 of said Block 1;

THENCE North 02 degrees 42 minutes 57 seconds East, departing said north right-of-way line and along common line between said Lot 1 and Lot 2, Block 1, a distance of 155.69 feet to a 1/2-inch iron rod with cap found for corner;

THENCE North 57 degrees 15 minutes 00 seconds West, continuing along said common line, a distance of 91.87 feet to a 1/2-inch iron rod with cap found for corner;

THENCE North 02 degrees 15 minutes 00 seconds West, continuing along said common line, a distance of 185.00 feet to a 1/2-inch iron rod with cap found for corner;

THENCE South 87 degrees 45 minutes 00 seconds West, continuing along said common line, a distance of 498.08 feet to an "X" found in concrete for corner, said point being on the east line of Lot 3, Block 1 of Revised Final Plat Park West-Phase II, an addition to the City of Farmers Branch, as recorded in Volume 89157, Page 0043, DRDCT;

THENCE North 02 degrees 31 minutes 36 seconds West, departing said common line and along the common line between said Lot 1 and Lot 3, a distance of 338.39 feet to a 1/2-inch iron rod with "Yandell Hulka" cap found for corner;

THENCE South 88 degrees 25 minutes 24 seconds West, continuing along said common line, passing at a distance of 616.07 feet the northwest corner of Lot 3, also being the northeast corner of Lot 4, Block 1, recorded in Volume 85186, Page 3424, and continuing along the common line between said Lot 1 and Lot 4, in all a distance of 1,224.76 feet to a 1/2-inch iron rod found for corner;

THENCE South 01 degrees 24 minutes 22 seconds West, continuing along said common line, a distance of 426.66 feet to a 1/2-inch iron rod with cap found for corner in said north right-of-way line of Interstate Highway 635;

THENCE North 79 degrees 04 minutes 16 seconds West, along said north right-of-way line a distance of 359.97 feet to 1/2-inch iron rod with cap found for corner;

THENCE North 77 degrees 04 minutes 33 seconds West, continuing along said north right-of-way line, a distance of 207.98 feet to a 1/2-inch iron rod with cap found for corner, said point being on the west city limit line of Farmers Branch, Texas;
THENCE the following courses and distances along the west city limit line of Farmers Branch, Texas, and parallel to and 10 feet east of the east bank of the Elm Fork of the Trinity River:

North 29 degrees 21 minutes 20 seconds West, a distance of 113.07 feet to a 1/2 inch iron rod found for corner;

North 30 degrees 08 minutes 32 seconds East, a distance of 14.47 feet to a 1/2 inch iron rod found for corner;

North 35 degrees 17 minutes 19 seconds West, a distance of 64.17 feet to a 1/2-inch iron rod with cap found for corner;

North 17 degrees 14 minutes 30 seconds West, a distance of 62.45 feet to a 1/2 inch iron rod found for corner;

North 29 degrees 50 minutes 14 seconds West, a distance of 35.16 feet to a 1/2 inch iron rod found for corner;

North 46 degrees 31 minutes 55 seconds West, a distance of 35.75 feet to a 1/2-inch iron rod with cap found for corner;

North 25 degrees 03 minutes 29 seconds West, a distance of 37.70 feet to 1/2 inch iron rod found for corner;

North 31 degrees 59 minutes 25 seconds West, a distance of 59.83 feet to a 1/2-inch iron rod with cap found for corner;

THENCE North 88 degrees 21 minutes 20 seconds East, departing said city limit line and said east bank, a distance of 211.52 feet to a 1/2-inch iron rod found for corner;

THENCE North 88 degrees 25 minutes 23 seconds East, a distance of 1844.33 feet to a point for corner in the centerline of the Farmers Branch-Carrollton Flood Control District Sump Easement;

THENCE South 02 degrees 31 minutes 30 seconds East, continuing along said centerline, a distance of 337.54 feet to a point for corner;

THENCE North 87 degrees 45 minutes East, a distance of 520.51 to the intersection of the centerline of said sump easement with the west right-of-way line of said Luna Road;

THENCE South 34 degrees 18 minutes 36 seconds East, departing said centerline and along said west right-of-way line, a distance of 131.65 feet to a 1/2-inch iron rod with cap found for corner, said corner being the point of curvature of a circular curve to the left having a radius of 1146.50 feet and a chord bearing South 37 degrees 50 minutes 27 seconds East, a distance of 141.22 feet;

THENCE Southeasterly, continuing along said west right-of-way line and along said curve to the left, through a central angle of 07 degrees 03 minutes 42 seconds, an arc distance of 141.31 feet to an "X" in the concrete found at the point of reverse curvature of a circular curve to the right having a radius of 1013.50 feet and a chord bearing South 37 degrees 50 minutes 27 seconds East, a distance of 124.83 feet;

THENCE Southeasterly, continuing along said west right-of-way line and along said curve to the right, through a central angle of 07 degrees 03 minutes 42 seconds, an arc distance of 124.91 feet to a 1/2 inch iron rod with cap found at the point of tangency;

THENCE South 34 degrees 18 minutes 36 seconds East, continuing along said west right-of-way line, a distance of 175.43 feet to a 1/2-inch iron rod with cap found at the north end of the aforementioned corner clip at the intersection of Luna Road and Interstate Highway 635;

THENCE South 29 degrees 12 minutes 12 seconds West, along said corner clip, a distance of 22.30 feet to the POINT OF BEGINNING AND CONTAINING 543,037 square feet or 12.47 acres of land more or less.

### TRACT 5: Easement Estates:

**Parcel A:** - Being a strip of land for an access, utility, and fire lane easement located in the Samuel P. Brown Survey, Abstract No. 158, and the Williams P. Shahan Survey, Abstract No. 1337, in the City of Farmers Branch, Dallas County, Texas, said strip of land is a portion of property platted as Lot 1, Lot 2, Lot 3 and Lot 4, Block 1, Park West-Phase II, as filed for record in Volume 85186, Page 3424, Deed Records of Dallas County, Texas, and being more particularly described as follows:

COMMENCING at the intersection of the extensions of the west right-of-way line of Luna Road (right-of-way width varies) and the north right-of-way line of Interstate Highway 635 (right-of-way width varies);

THENCE North 34 degrees 18 minutes 36 seconds West, along the west right-of-way line of Luna Road, a distance of 200.43 feet to the point of tangency of a circular curve to the left having a radius of 1013.50 feet;

THENCE Northwesterly, continuing along said right-of-way line and along said curve, an arc distance of 107.89 feet through a central angle of 06 degrees 05 minutes 57 seconds to the

POINT OF BEGINNING, said point being the beginning a non-tangent circular curve to the left having a radius of 40.00 feet and whose chord bears South 69 degrees 14 minutes 22 seconds West, a distance of 39.63 feet;

THENCE, Southwesterly, departing said west right-of-way line and along said curve, a distance of 41.46 feet through a central angle of 59 degrees 23 minutes 23 seconds to a point, said point being the point of tangency of a circular curve to the left having a radius of 119.50 feet;

THENCE along said curve a distance of 22.92 feet through a central angle of 10 degrees 59 minutes 29 seconds to a point;

THENCE South 28 degrees 33 minutes 11 seconds West, a distance of 95.00 feet to a point, said point being the point of tangency of a circular curve to the right having a radius of 192.65 feet;

THENCE along said curve, a distance of 215.34 feet through a central angle of 64 degrees 09 minutes 46 seconds to a point;

THENCE North 87 degrees 17 minutes 03 seconds West, a distance of 527.26 feet to a point, said point being the point of tangency of a circular curve to the right having a radius of 513.50 feet;

THENCE along said curve, a distance of 201.66 feet through a central angle of 22 degrees 30 minutes 03 seconds to a point;

THENCE North 64 degrees 47 minutes 00 degrees West, a distance of 119.85 feet to a point, said point being on the point of tangency of a circular curve to the left having a radius of 486.50 feet;

THENCE along said curve, a distance of 227.51 feet through a central angle of 26 degrees 47 minutes 37 seconds to a point;

THENCE South 88 degrees 25 minutes 23 seconds West, a distance of 64.35 feet to a point, said point being located on Lot 4, Block 1, east property line;

THENCE North 01 degree 34 minutes 37 seconds West along said east property line, a distance of 27.00 feet to a point;

THENCE North 88 degrees 25 minutes 23 seconds East, a distance of 64.35 feet to. a point, said point being the point of tangency of a circular curve to, the right having a radius of 513.50 feet;

THENCE along said curve, a distance of 240.13 feet through a central angle of 26 degrees, 47 minutes 37 seconds to a point;

THENCE South 64 degrees 47 minutes 00 seconds East, a distance of 119.85 feet to a point, said point being the point of tangency of a circular curve to the. left having a radius of 486.50 feet;

THENCE along said curve, a distance of 191.06 feet through a central angle of 22 degrees 30 minutes 03 seconds to a point;

THENCE South 87 degrees 17 minutes 03 seconds East, a distance of 471.02 feet to a point, said point being the point of tangency of a circular curve to the left having a radius of 191.92 feet;

THENCE along said curve, a distance of 214.32 feet through a central angle of 64 degrees 09 minutes 46 seconds to a point;

THENCE North 28 degrees 33 minutes 11 seconds East, a distance of 95.00 feet to a point, said point being the point of tangency of a circular curve to the right having a radius of 180.5 feet;

THENCE along said curve 56.75 feet through a central angle of 18 degrees 00 minute 47 seconds to a point, said point being the point of tangency of a circular curve to the left having a radius of 40.00 feet;

THENCE along said curve, a distance of 30.31 feet through a central angle of 43 degrees 25 minutes 05 seconds to a point, said point being the beginning of a non-tangent circular curve to the left having a radius of 1146.50 feet and whose chord bears South 39 degrees 35 minutes 26 seconds East, a distance of 71.27 feet, said point also being on said west right-of-way line;

THENCE along said curve on said west right-of-way, a distance of 71.28 feet to the point of tangency of a circular curve to the right having a radius of 1013.50 feet;

THENCE along said curve on said right-of-way line a distance of 17.03 feet through a central angle of 00 degrees 57 minutes 45 seconds to, the POINT OF BEGINNING AND CONTAINING, 51,095 square feet or 1.173 acres of land, more or less, and being the same property as a portion of the road locally known as Park West Boulevard as platted in Lot 1, Lot 2, Lot 3 and Lot 4, Block 1, Park West-Phase II, s filed for record in Volume 85186, Page 3424, Deed Records of Dallas County, Texas.

**PARCEL B:**   Common Easements granted by that certain Declaration recorded in Volume 2005072, Page 4700, Real Property Records of Dallas County, Texas.

## EXHIBIT B

## Other Collateral

All capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Deed of Trust.

<u>Fixtures</u>:  All materials, supplies, equipment, apparatus and other items now or hereafter attached to, installed on or in the Land or the Improvements, or which in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of Texas, including the Texas Uniform Commercial Code.  The term "Fixtures" shall include, without limitation, all items of personalty to the extent that the same may be deemed Fixtures under applicable law.

<u>Improvements</u>:  Any and all buildings, structures, roadways, utility lines and facilities, open parking areas, and other improvements, and any and all accessions, additions, replacements, substitutions or alterations thereof or appurtenances thereto, now or at any time hereafter situated, placed or constructed upon the Land or any part thereof.

<u>Leases</u>:  Any and all leases, subleases, licenses, concessions or other agreements (written or verbal, now or hereafter in effect) which now or hereafter grant a possessory interest in and to, or the right to extract, mine, reside in, operate in or use the Mortgaged Property.

<u>Mortgaged Property</u>:  The Land, Improvements, Fixtures, Personalty, Leases and Rents, together with:

(i)    all rights, privileges, tenements, hereditaments, rights of way, easements, appendages and appurtenances in anywise appertaining thereto, and all right, title and interest of Mortgagor in and to any street, ways, alleys, strips or gores of land adjoining the Land or any part thereof, which Mortgagor now owns or at any time hereafter acquires;

(ii)    all betterments, accessions, additions, appurtenances, substitutions, replacements and revisions thereof and thereto and all reversions and remainders therein;

(iii)    all of Mortgagor's right, title and interest in and to any award, remuneration, settlement or compensation heretofore made or hereafter to be made by any Governmental Authority to Mortgagor, including those for any vacation of, or change of grade in, any streets affecting the Land or the Improvements;

(iv)    all plans and specifications for the Improvements;

(v)    all rights of the Mortgagor (including, without limitation, rights as "Declarant" and/or "Subdeclarant" and all rights to amend or modify or consent to any amendment or modification of any of the following) under or in regard to any and all declarations of covenants and restrictions and/or supplementary declarations of covenants and restrictions affecting the Land;

(vi)    all contracts and subcontracts relating to the Land or any other portion of the Mortgaged Property (including, without limitation, those relating to the sale of any of the Land or any other portion of the Mortgaged Property), Improvements, Fixtures, Personalty, Leases and Rents, all deposits (including tenant's security deposits), funds, accounts, contract rights (including, without limitation, rights to reimbursements), instruments, documents, general intangibles (including trademarks, service marks, trade names and symbols used in connection therewith), and notes or chattel paper arising from or by virtue of any transactions related to the property described herein;

(vii)    all permits, licenses, franchises, certificates, entitlements (including, without limitation, the Existing Entitlements) and other rights and privileges obtained in connection with the property described herein;

(viii)    all proceeds arising from or by virtue of the sale, lease or other disposition of all or any part of the Mortgaged Property (consent to same not granted or to be implied hereby);

(ix)    all proceeds (including premium refunds) payable or to be payable under each policy of insurance relating to the Mortgaged Property;

(x)    all other interest of every kind and character which Mortgagor now has or at any time hereafter acquires in and to the above described real and personal property and all property which is used or useful in connection therewith, including rights of ingress and egress, easements, licenses, and all reversionary rights or interests of Mortgagor with respect to such property.  To the extent permitted by law, all of the foregoing personal property and Fixtures are to be deemed and held to be a part of and affixed to the real property.  In the event the estate of the Mortgagor in and to any of the Land and Improvements is a leasehold estate, then same shall include, and the lien, security interest and assignment created by the Deed of Trust shall encumber and extend to, all other, further or additional titles, estates, interest or rights which may exist now or at any time be acquired by Mortgagor in or to the property demised under the lease creating such leasehold estate and including Mortgagor's rights, if any, to purchase the property demised under such lease and, if fee simple title to any of such property shall ever become vested in Mortgagor, such fee simple interest shall be encumbered by the Deed of Trust in the same manner as if Mortgagor had fee simple title to such property as of the date of execution of the Deed of Trust without the necessity of any further act by Mortgagor, Mortgagee or any third party; and

(xi)    any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations.

The term "Mortgaged Property" is expressly defined as meaning all or, where the context permits or requires, any portion of the above and all or, where the contest permits or requires, any interest therein.

Personalty:  All of the right, title and interest of Mortgagor in and to all tangible and intangible personal property, including all accounts, equipment, consumer goods, chattel paper, goods, inventory, instruments, money, general intangibles, documents, minerals, crops and timber (as those terms are defined in the Texas Uniform Commercial Code) which are attached to, installed on or placed or used on, in connection with or which are acquired for such attachment, installation, placement or use, or which arise out of the development, improvement, financing, leasing, operations, use or maintenance of, the Land, the Improvements, Fixtures or other goods located on the Land or Improvements, or from or out of any business operated in or from the Land or the Improvements, together with all additions, accessions, accessories, amendments and modifications thereto, extensions, renewals, enlargements and proceeds thereof, substitutions therefore, and income and profits therefrom.  The following are included, without limitation, in the definition of Personalty:  furnishings, building materials, supplies, machines, engines, boilers, stokers, pumps, fans, vents, blowers, dynamos, furnaces, elevators, ducts, shafts, pipes, furniture, cabinets, shades, blinds, screens; plumbing, heating, air conditioning, lighting, lifting, ventilating, refrigerating, cooking, medical, laundry and incinerating equipment, partitions, drapes, carpets, rugs and other floor coverings, awnings, call and sprinkler systems, fire prevention and extinguishing apparatus and equipment, water tanks, swimming pools, compressors, vacuum cleaning systems, disposals, dishwashers, ranges, ovens, kitchen equipment, cafeteria equipment, recreational equipment, lawn and landscaping equipment and supplies, loan commitments, management agreements, maintenance and service agreements, utility contracts, financing arrangements, bonds, construction contracts, leases, licenses, permits, sales contracts, insurance policies and the proceeds therefrom, plans and specifications, surveys, rent rolls, books and records, funds, bank deposits and all other intangible personal property.

Rents:  All of the rents, revenues, income, proceeds, royalties, profits and other benefits now or hereafter paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting or otherwise enjoying or using the Mortgaged Property, if any, including, without limitation, all damages received following any default under any of the Leases and all proceeds payable under any policy of insurance covering loss of rents.

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF TEXAS §
§            KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS §

WHEREAS, INCOME OPPORTUNITY REALTY INVESTORS, INC., a Nevada corporation ("Income Realty") and TRANSCONTINENTAL REALTY INVESTORS, INC., a Nevada corporation ("Transcontinental") (collectively, the "Mortgagor"), executed that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (as same may have been heretofore extended, renewed, modified and/or restated, the "Deed of Trust"), dated May 1, 2009, recorded as Document No. 200900126637, Real Property Records, Dallas County, Texas, to J. Richard White, Trustee (the "Original Trustee") for the benefit of KEYCORP REAL ESTATE CAPITAL MARKETS, INC., as agent (in such capacity, the "Mortgagee") for the benefit of the lenders (collectively, the "Lender") from time to time a party to that certain Loan Agreement ("Loan Agreement") dated January 19, 2007 between Nexbank, SSB, as a lender and as Agent, and TCI PARK WEST II, INC., a Nevada corporation, now known as FRE Real Estate, Inc., and formerly known as Fenton Real Estate Inc. ("Borrower"), which Deed of Trust covers certain land ("Land") located in Dallas County, Texas, more particularly described in Exhibits A-1 and A-2 attached hereto and incorporated herein by reference, and certain other collateral ("Other Collateral") more particularly described in Exhibit B attached hereto and incorporated herein by reference (the Land and Other Collateral is herein referred to as the "Mortgaged Property"), to secure that certain Promissory Note (together with any and all extensions, renewals, modifications, restatements and replacements thereof, the "Note"), dated January 19, 2007, in the principal amount of $62,000,000.00, executed by Borrower and payable to NEXBANK SSB, a Texas state savings bank (in such capacity, the "Original Payee"), and all other indebtedness, liabilities, and obligations (collectively, the "Indebtedness") described in the Note and Deed of Trust; and

WHEREAS, pursuant to and in accordance with the terms and conditions of the Deed of Trust, Mortgagee has heretofore appointed J. RICHARD WHITE, JEFFREY D. LIVINGSTON and SHERRY A. BALDWIN, each an individual residing in Dallas County, Texas and each with a street address of 5400 Renaissance Tower, 1201 Elm Street, Dallas, Texas 75270, individually and severally, and not jointly (collectively, the "Substitute Trustees" or, severally, a "Substitute Trustee"), each of whom may act alone, without the necessity of the joinder of the other Substitute Trustees, as the substitute trustees, in the place and stead of and to succeed to all of the rights, titles, estates, powers, privileges and authorities granted in the Deed of Trust to the Original Trustee; and

WHEREAS, to secure the Indebtedness, the Deed of Trust created a lien on, among other things, certain real property (the "Land") situated in Dallas County, Texas, as more particularly described on Exhibits A-1 and A-2 hereto; and

WHEREAS, further to secure the Indebtedness, the Deed of Trust also creates a lien and security interest in favor of Mortgagee in certain other collateral located on or related to the Land

as more particularly described on <u>Exhibit B</u> hereto (collectively, the "<u>Other Collateral</u>") (the Land and the Other Collateral being herein collectively called the "<u>Mortgaged Property</u>"); and

WHEREAS, a default has occurred in the payment of the Indebtedness evidenced by the Note and Deed of Trust and the same has been accelerated and is now wholly due and payable; and

WHEREAS, Mortgagor has purported to convey to Borrower, in violation of the Deed of Trust, all or a portion Mortgaged Property pursuant to (i) that certain General Warranty Deed executed by Transcontinental to Borrower, recorded as Document # 201100001404, Real Property Records, Dallas County, Texas, and (ii) that certain General Warranty Deed executed by Income Realty to Borrower, recorded as Document # 201100001408, Real Property Records, Dallas County, Texas; and

WHEREAS, that certain Loan/CDO Servicing Agreement ("<u>Servicing Agreement</u>") dated as of December 20, 2006 was executed by Highland Park CDO I, Ltd., as the Issuer, Mortgagee, as the Master Servicer, Highland Capital Management, L.P., a Delaware limited partnership, as the HP CDO I Collateral Servicer and as Special Loan/CDO Servicer ("<u>Special Servicer</u>"), and The Bank of New York, a New York banking corporation, as the Back-Up Loan/CDO Servicer, pursuant to which the authority to service the Note and the Deed of Trust was granted to Mortgagee and Special Servicer; and

WHEREAS, Mortgagee, acting through Special Servicer in accordance with Section 12.21 of the Deed of Trust and the Servicing Agreement, has made demand upon Mortgagor and Borrower to pay to Mortgagee the Indebtedness now due, but such Indebtedness has not been paid; and

WHEREAS, the address of the Mortgagee is 911 Main Street, Suite 1500, Kansas City, Missouri 64105; and

WHEREAS, the actions herein specified are allowed pursuant to (i) that certain Order Granting Motions to Dismiss of Wells Fargo Capital Finance, Inc. and Armed Forces Bank, N.A., dated March 1, 2011, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 11-30210-bjh11, Chapter 11, whereby the first bankruptcy case of Mortgagor was dismissed, and (ii) that certain Order Granting Motion Seeking Emergency Stay Consideration dated April 8, 2011, in the United States Bankruptcy Court for the Northern District of Texas, Case No. 11-42042-DML-11, Chapter 11, whereby the automatic stay in the second bankruptcy case was modified to permit posting for foreclosure, provided that no further action shall be taken to foreclose absent further order of the court; and

WHEREAS, Mortgagee, as the beneficiary under the Deed of Trust, has instructed the Substitute Trustees or any one of them, acting alone without the necessity of the joinder of the other Substitute Trustees to post, file and mail, or cause to be posted, filed and mailed, appropriate notice and to sell the Mortgaged Property to satisfy, in whole or in part, the unpaid Indebtedness.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on Tuesday, May 3, 2011, no earlier than 10 a.m., or no later than three hours after that time, the Substitute Trustees or any one

of them, acting alone without the necessity of the joinder of the other Substitute Trustees will commence the sale of the Mortgaged Property, in parcels or as a whole, at public auction to the highest bidder for cash; such sale will be held at the area outside on the north side of the George Allen Courts Building facing Commerce Street below the overhang, Dallas, Dallas County, Texas, which area was designated by the Commissioner's Court of said County; SUBJECT, HOWEVER, to all liens, exceptions to title, easements, restrictions, and encumbrances affecting any of the Mortgaged Property or title thereto which are equal or prior to the lien and security interest created by the Deed of Trust, and further subject to any and all leases covering all or any part of the Mortgaged Property to which the Deed of Trust is now or may prior to such sale be subordinated. The Substitute Trustee's sale will occur between the earliest time to begin the sale as specified above and 4:00 p.m..

To the extent that any of the Mortgaged Property described on Exhibits A-1 and A-2 or Exhibit B hereto has been released from the lien of the Deed of Trust, by written instrument signed by Mortgagee and filed for record in the Real Property Records of Dallas County, Texas, or has been released from the security interest created in the Deed of Trust by an appropriate financing statement amendment filed by Mortgagee in the applicable filing office, this notice is not intended to and does not cover such property, and such property will not be part of the Mortgaged Property conveyed to the purchaser by reason of such sale.

If such sale or sales do not result in full satisfaction of all of the Indebtedness now due, the lien and security interest of the Deed of Trust shall remain in full force and effect in respect of any of the Mortgaged Property not so sold and any and all other types of real and personal property covered by the Deed of Trust and not described herein.

IN WITNESS WHEREOF, the Substitute Trustee has signed this notice as of April 8, 2011.

[The remainder of this page is intentionally left blank.]

**SUBSTITUTE TRUSTEE:**

Name: Jeffrey D. Livingston

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

This instrument was ACKNOWLEDGED before me on April 8, 2011, by Jeffrey D. Livingston, in the capacity therein stated.

[S E A L]



Notary Public in and for the State of Texas

_____
Printed Name of Notary Public

NOTICE OF SUBSTITUTE TRUSTEE'S SALE – Signature Page

EXHIBIT A-1

Income Realty Land

[The description of the Income Realty Land follows this cover page.]

04-29-09
46502-5
Income Realty Land

EXHIBIT "A-1"

## Income Realty Land Description

BEING a tract of land situated in the Francis Miller Survey, Abstract No. 926, Dallas County, Texas, and being all of Lot 1, Block A of Three Hickory Addition, an addition to the City of Farmers Branch as recorded in Document No. 20080134020, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being part of a tract of land described in deed to Income Opportunity Realty Investors, Inc., as recorded in Volume 2000249, Page 5755, (D.R.D.C.T.) and being more particularly described as follows:

BEGINNING at a 1/2-inch found iron rod with a yellow plastic cap stamped 'Halff Assoc. Inc.' (hereinafter referred to as 'with cap') found for the most Northerly corner of said Lot 1, Block A in the Southerly right-of-way line of Valley View Lane (variable width right-of-way), said point being the West line of Lot 1, Block B, Mercer Crossing Addition I, an addition to the City of Farmers Branch as recorded in Volume 2003184, Page 0061, D.R.D.C.T.;

THENCE South 31 degrees 11 minutes 20 seconds East, departing said Southerly right-of-way line, and along said West line a distance of 250.90 feet to a 1/2-inch found iron rod with cap for corner;

THENCE South 45 degrees 00 minutes 26 seconds East, continuing along said West line, a distance of 50.54 feet to a 1/2-inch found iron rod with cap for corner, said point along common line of said Income Opportunity Realty Investors tract and said Lot 1, Block B, Mercer Crossing Addition I:

THENCE South 02 degrees 22 minutes 37 seconds East, along said common line, a distance of 261.26 feet to a 1/2-inch found iron rod with cap for corner and for the most Southwesterly corner of said Lot 1, Block B, said corner being in the Northerly right-of-way line of Atworth Street (a 60 foot right-of-way) as recorded in Document No. 20080134020, D.R.D.C.T.;

THENCE South 60 degrees 37 minutes 23 seconds West, departing said common line, and along said Northerly right-of-way line, a distance of 423.96 feet to a 1/2-inch found iron rod with cap for corner;

THENCE North 74 degrees 22 minutes 37 seconds West, departing said Northerly right-of-way line, a distance of 35.36 feet to a 1/2-inch found iron rod with cap for corner in the Easterly right-of-way line of Davenport Street (a 60 foot right-of-way) as recorded in Document No. 20080134020, D.R.D.C.T.;

THENCE along the Easterly right-of-way line of said Davenport Street, same being the West line of said Three Hickory Addition tract, the following bearings and distances:

North 29 degrees 22 minutes 37 seconds West a distance of 408.36 feet to a railroad spike with a punch mark found for the beginning of a circular curve to the right having a radius of 408.00 feet and whose chord bears North 29 degrees 16 minutes 21 seconds West, a distance of 1.49 feet;

Northwesterly along said circular curve, through a central angle of 00 degrees 12 minutes 32 seconds, an arc distance of 1.49 feet to a railroad spike with a punch mark found for corner;

North 13 degrees 06 minutes 26 seconds West, a distance of 56.44 feet to a railroad spike found for corner for the point of a non-tangent circular curve to the right having a radius of 492.00 feet and whose chord bears North 18 degrees 18 minutes 54 seconds West, a distance of 45.83 feet;

Northwesterly along said circular curve, through a central angle of 05 degrees 20 minutes 19 seconds, an arc distance of 45.84 feet to a 1/2-inch found iron rod with cap for corner;

North 15 degrees 05 minutes 45 seconds West, a distance of 29.87 feet to a 1/2-inch found iron rod with cap for corner;

North 29 degrees 09 minutes 12 seconds East, a distance of 28.66 feet to a 1/2-inch found iron rod with cap for corner on said Southerly right-of-way line of Valley View Lane, said point also being on a non-tangent circular curve to the left having a radius 1,975.08 feet whose chord bears North 65 degrees 57 minutes 16 seconds East, a distance of 491.72 feet;

THENCE Northeasterly, along said South right-of-way line, and along said curve to the left, through a central angle of 14 degrees 18 minutes 06 seconds, an arc distance of 493.00 feet to the POINT OF BEGINNING AND CONTAINING 289,139 square feet or 6.638 acres of land, more or less.

EXHIBIT "A-1", Income Realty Land Description – Page 2

EXHIBIT A-2

<u>Transcontinental Land</u>

[The description of the Transcontinental Land follows this cover page.]

EXHIBIT "A-2"

Transcontinental Land Description

BEING a tract of land situated in the F. Miller Survey. Abstract No. 926 and the S.A. & M.G.R.R. Survey, Abstract No. 1418, Dallas County, Texas and being all of a tract of land as described in a deed to 2021 Valley View, LTD. and recorded in Volume 2003059, Page 0470 of the Deed Records of Dallas County, Texas (DRDCT) and being all of Lot 1 of the Kennington Square Addition, an addition to the City of Farmers Branch as recorded in Volume 82064, Page 3039 of the Plat Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a 1/2 inch iron rod found for the most southwesterly corner of Landa Addition, an addition to the City of Farmers Branch as recorded in Volume 71037, Page 1984 (DRDCT) and also described in a deed to Transcontinental Realty Investors, Inc. as recorded in Document No. 200600004790 (DRDCT), said iron rod also being in the easterly right-of-way line of Senlac Drive (a 70 foot right-of-way);

THENCE along the southerly line of said Landa Addition South 89 deg 21 min 12 sec. East a distance of 511.09 feet to a 1/2 inch iron rod found for the most southeasterly corner of said Landa Addition;

THENCE along the easterly line of said Landa Addition North 00 deg 20 min 42 sec West a distance of 146.28 feet to a point from which 1/2 inch iron rod found bears South 66 deg 56 min 32 sec West a distance of 0.85 feet, said point being the most southwesterly corner of Lot 2 of the Third Revised Lasting Products Addition, an addition to the City of Farmers Branch as recorded in Vol. 2003158, Page 0138 (DRDCT) and also described in a deed to Transcontinental Realty Investors, Inc. as recorded in Volume 2005151, Page 6635 (DRDCT);

THENCE departing the easterly line of said Landa Addition and along the southerly line of said Lot 2 of the Third Revised Lasting Products Addition South 89 deg 43 min 04 sec East a distance of 200.00 feet to a point from which a 1/2 inch iron rod found bears North 67 deg 24 min 52 sec East a distance of 2.92 feet, said point being the most southeasterly corner of said Lot 2 of the Third Revised Lasting Products Addition and also being in the westerly line of Lot 1 of said Third Revised Lasting Products Addition and also described in a deed to Cobalt Industries Partners, L.P. as recorded in Volume 2003251, Page 2330 (DRDCT);

THENCE along the westerly line of said Lot 1, Third Revised Lasting Products Addition South 00 deg 20 min 42 sec East a distance of 532.61 feet to a 1/2 inch iron rod with a red plastic cap stamped W.A.I. set for the most southwesterly corner of said Lot 1, Third Revised Lasting Products Addition, said iron rod also being in the northerly right-of-way line of Valley View Lane (a 130 foot right-of-way);

THENCE along the northerly right-of-way line of Valley View Lane as follows:

South 78 deg 09 min 00 sec West a distance of 6.03 feet to a 1/2 inch iron rod with a red plastic cap stamped W.A.l. set for corner;

EXHIBIT "A-2", Transcontinental Land Description – Page 1

South 83 deg 45 min 06 sec West a distance of 123.98 feet to a 1/2 inch iron rod with a red plastic cap stamped W.A.I. set for the beginning of a non-tangent curve to the left having a radius of 3380.52 feet, a chord bearing North 87 deg 34 min 54 sec West and a chord distance of 209.00 feet;

Along said non-tangent curve to the left through a central angle of 03 deg 32 min 35 sec for an arc length of 209.04 feet to a 1/2 inch iron rod with a red plastic cap stamped W.A.I. set for corner;

North 89 deg 21 min 12 sec West a distance of 353.64 feet to a 1/2 inch iron rod with a red plastic cap stamped W.A.I . set for corner;

North 44 deg 48 min 26 sec West a distance of 28.51 feet to a 1/2 inch iron rod with a red plastic cap stamped W.A.I. set for corner in the easterly right-of-way line of Senlac Drive;

THENCE along the easterly right-of-way line of Senlac Drive North 00 deg 15 min 41 sec West a distance on 374.78 feet to the Point of Beginning;

Containing within these metes and bounds 7.123 acres or 310,264 square feet of land, more or less.

<u>EXHIBIT B</u>

<u>Other Collateral</u>

All capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Deed of Trust.

<u>Fixtures</u>:  All materials, supplies, equipment, apparatus and other items now or hereafter attached to, installed on or in the Land or the Improvements, or which in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of Texas, including the Texas Uniform Commercial Code.  The term "Fixtures" shall include, without limitation, all items of personalty to the extent that the same may be deemed Fixtures under applicable law.

<u>Improvements</u>:  Any and all buildings, structures, roadways, utility lines and facilities, open parking areas, and other improvements, and any and all accessions, additions, replacements, substitutions or alterations thereof or appurtenances thereto, now or at any time hereafter situated, placed or constructed upon the Land or any part thereof.

<u>Leases</u>:  Any and all leases, subleases, licenses, concessions or other agreements (written or verbal, now or hereafter in effect) which now or hereafter grant a possessory interest in and to, or the right to extract, mine, reside in, operate in or use the Mortgaged Property.

<u>Mortgaged Property</u>:  The Land, Improvements, Fixtures, Personalty, Leases and Rents, together with:

      (i)     all rights, privileges, tenements, hereditaments, rights of way, easements, appendages and appurtenances in anywise appertaining thereto, and all right, title and interest of Mortgagor in and to any street, ways, alleys, strips or gores of land adjoining the Land or any part thereof, which Mortgagor now owns or at any time hereafter acquires;

      (ii)     all betterments, accessions, additions, appurtenances, substitutions, replacements and revisions thereof and thereto and all reversions and remainders therein;

      (iii)     all of Mortgagor's right, title and interest in and to any award, remuneration, settlement or compensation heretofore made or hereafter to be made by any Governmental Authority to Mortgagor, including those for any vacation of, or change of grade in, any streets affecting the Land or the Improvements;

      (iv)     all plans and specifications for the Improvements;

      (v)     all rights of the Mortgagor (including, without limitation, rights as "Declarant" and/or "Subdeclarant" and all rights to amend or modify or consent to any amendment or modification of any of the following) under or in regard to any and all declarations of covenants and restrictions and/or supplementary declarations of covenants and restrictions affecting the Land;

EXHIBIT B, Other Collateral – Page 1

(vi)    all contracts and subcontracts relating to the Land or any other portion of the Mortgaged Property (including, without limitation, those relating to the sale of any of the Land or any other portion of the Mortgaged Property), Improvements, Fixtures, Personalty, Leases and Rents, all deposits (including tenant's security deposits), funds, accounts, contract rights (including, without limitation, rights to reimbursements), instruments, documents, general intangibles (including trademarks, service marks, trade names and symbols used in connection therewith), and notes or chattel paper arising from or by virtue of any transactions related to the property described herein;

(vii)    all permits, licenses, franchises, certificates, entitlements (including, without limitation, the Existing Entitlements) and other rights and privileges obtained in connection with the property described herein;

(viii)    all proceeds arising from or by virtue of the sale, lease or other disposition of all or any part of the Mortgaged Property (consent to same not granted or to be implied hereby);

(ix)    all proceeds (including premium refunds) payable or to be payable under each policy of insurance relating to the Mortgaged Property;

(x)    all other interest of every kind and character which Mortgagor now has or at any time hereafter acquires in and to the above described real and personal property and all property which is used or useful in connection therewith, including rights of ingress and egress, easements, licenses, and all reversionary rights or interests of Mortgagor with respect to such property.  To the extent permitted by law, all of the foregoing personal property and Fixtures are to be deemed and held to be a part of and affixed to the real property.  In the event the estate of the Mortgagor in and to any of the Land and Improvements is a leasehold estate, then same shall include, and the lien, security interest and assignment created by the Deed of Trust shall encumber and extend to, all other, further or additional titles, estates, interest or rights which may exist now or at any time be acquired by Mortgagor in or to the property demised under the lease creating such leasehold estate and including Mortgagor's rights, if any, to purchase the property demised under such lease and, if fee simple title to any of such property shall ever become vested in Mortgagor, such fee simple interest shall be encumbered by the Deed of Trust in the same manner as if Mortgagor had fee simple title to such property as of the date of execution of the Deed of Trust without the necessity of any further act by Mortgagor, Mortgagee or any third party; and

(xi)    any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations.

The term "Mortgaged Property" is expressly defined as meaning all or, where the context permits or requires, any portion of the above and all or, where the contest permits or requires, any interest therein.

Personalty:  All of the right, title and interest of Mortgagor in and to all tangible and intangible personal property, including all accounts, equipment, consumer goods, chattel paper, goods, inventory, instruments, money, general intangibles, documents, minerals, crops and timber (as those terms are defined in the Texas Uniform Commercial Code) which are attached to, installed on or placed or used on, in connection with or which are acquired for such attachment, installation, placement or use, or which arise out of the development, improvement, financing, leasing, operations, use or maintenance of, the Land, the Improvements, Fixtures or other goods located on the Land or Improvements, or from or out of any business operated in or from the Land or the Improvements, together with all additions, accessions, accessories, amendments and modifications thereto, extensions, renewals, enlargements and proceeds thereof, substitutions therefore, and income and profits therefrom.  The following are included, without limitation, in the definition of Personalty:  furnishings, building materials, supplies, machines, engines, boilers, stokers, pumps, fans, vents, blowers, dynamos, furnaces, elevators, ducts, shafts, pipes, furniture, cabinets, shades, blinds, screens; plumbing, heating, air conditioning, lighting, lifting, ventilating, refrigerating, cooking, medical, laundry and incinerating equipment, partitions, drapes, carpets, rugs and other floor coverings, awnings, call and sprinkler systems, fire prevention and extinguishing apparatus and equipment, water tanks, swimming pools, compressors, vacuum cleaning systems, disposals, dishwashers, ranges, ovens, kitchen equipment, cafeteria equipment, recreational equipment, lawn and landscaping equipment and supplies, loan commitments, management agreements, maintenance and service agreements, utility contracts, financing arrangements, bonds, construction contracts, leases, licenses, permits, sales contracts, insurance policies and the proceeds therefrom, plans and specifications, surveys, rent rolls, books and records, funds, bank deposits and all other intangible personal property.

Rents:  All of the rents, revenues, income, proceeds, royalties, profits and other benefits now or hereafter paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting or otherwise enjoying or using the Mortgaged Property, if any, including, without limitation, all damages received following any default under any of the Leases and all proceeds payable under any policy of insurance covering loss of rents.