Henry W. Simon, Jr.
Texas Bar No. 18394000
Robert A. Simon
Texas Bar No. 18390000
Spencer D. Solomon
Texas Bar No. 24066117
**BARLOW GARSEK & SIMON, LLP**
3815 Lisbon Street
Fort Worth, Texas 76107
Telephone: (817) 731-4500
Facsimile: (817) 731-6200
**Proposed Attorneys for FRE Real Estate, Inc.,**
**Debtor-in-Possession**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 11-42042-dml-11** |
| **FRE REAL ESTATE, INC.,** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR.** | § | |

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S**
**LETTER RULING OF APRIL 29, 2011 AND ORDER ENTERED**
**IN CONNECTION THEREWITH**
**[Relates to Docket Nos. 64 & 66]**

TO THE HONORABLE D. MICHAEL LYNN, UNITED STATES BANKRUPTCY JUDGE:

Debtor-in-Possession, FRE Real Estate, Inc. (the "Debtor"), pursuant to Federal Rule of Civil Procedure 59(a) and Federal Rule of Bankruptcy Procedure 9023, files this Emergency Motion for Reconsideration of Court's Letter Ruling of April 29, 2011, [Docket No. 64], and Order Entered in Connection Therewith on May 2, 2011, [Docket No. 66], (collectively, the "Order"). In support, the Debtor respectfully represents as follows:

# I.

## PRELIMINARY STATEMENT

1.     On April 4, 2011 (the "Petition Date"), the Debtor filed a voluntary petition, initiating the above-referenced Chapter 11 case.

2.     The Debtor owns four separate parcels of real property: (a) two seven-story office towers located at 1501-1503 and 1505-1507 LBJ Freeway in Farmer's Branch, Texas 75234 ("Fenton Centre"); (b) 4.7 acres of undeveloped land adjacent to Fenton Centre on LBJ Freeway (the "Adjacent Land"); (c) a 177,805 square foot building in Farmer's Branch, Texas, off of Valley View Lane, just east of Mercer Crossing (the "Thermalloy Building"); and (d) 6.60 acres of vacant land in Mercer Crossing, just off Valley View Lane, alongside Whittington (the "Three Hickory Tract"); (collectively, the "Real Property").   The Debtor's primary source of income comes from rents generated from Fenton Centre.

3.     The Debtor is indebted to its mortgage lender, NexBank, in the amount of approximately $60,400,000.00.   NexBank's note is collateralized by Fenton Centre pursuant to a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing executed on or about January 19, 2007 (the "Deed of Trust").[2]

4.     On April 7, 2011, the Debtor filed its Motion for Authority to Use Cash Collateral (the "Motion").   [Docket No. 21]   The Motion acknowledges that rents from the Debtor's Property are collateral for NexBank's loan and seeks a Court order authorizing the Debtor to use such cash collateral to pay its operating expenses.

---

[2] NexBank's note is also collateralized by the remainder of the Real Property pursuant to loan modifications and deeds of trust executed after the Deed of Trust covering Fenton Centre.   However, Fenton Centre is the Debtor's only income-producing property and, as such, is the only property relevant to the issue of cash collateral.

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 2**

5.      On April 11, 2011, Highland Capital Management, L.P. ("Highland"), the purported Special Servicer for NexBank, filed an Objection to the Motion (the "Objection"). [Docket No. 30].

6.      On April 13 and 14, 2011, this Court held a preliminary hearing on the Motion and authorized the Debtor to continue using income from rents to pay operating expenses on an interim basis until the Court made a determination regarding whether the rents constitute NexBank's collateral or were subject to an absolute assignment.

7.      On April 29, 2011, this Court sent the parties a letter via email setting forth the Court's ruling on the Motion.  In the letter ruling, the Court concluded that NexBank's loan documents unambiguously create an absolute assignment of rents, and directed counsel for Highland to submit a proposed order denying the Motion.  Although the Court stated that the contradictory language in NexBank's loan documents "would certainly require a finding that the parties' intent to create an absolute assignment was ambiguous and not clear," the Court ultimately concluded that one sentence in Paragraph 10.1 of the Deed of Trust required the Court to disregard all other provisions and hold that the assignment of rents was absolute.  Specifically, the Court determined that because that sentence contained the word "notwithstanding," it negates all other language in the Deed of Trust and must be read in isolation.

8.      This Court should reconsider the Order and the legal conclusions on which it is based for the following reasons:

9.      First, the Court's conclusions do not address or otherwise account for the plain language in 11 U.S.C § 541(a)(6), which specifically makes post-petition "rents" property of the Debtor's bankruptcy estate, with no exception for rents subject to an absolute assignment executed by the Debtor prepetition.

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 3

10.     Second, the Court's conclusion is incompatible with the strong presumption under Texas law that the parties did not create an absolute assignment of rents; a presumption that can only be rebutted by "especially clear evidence."  One word buried within one section of a forty (40) page Deed of Trust cannot satisfy Highland's evidentiary burden as a matter of law. As this Court pointed out in its letter ruling, the Deed of Trust is rife with language purporting to create a security interest.  Texas substantive law and Texas rules of contract construction required the Court to focus on *that language*, rather than one word in one sentence, buried in Section 10.1 of the Deed of Trust.  Moreover, because the purported absolute assignment is not automatic and self-executing, Texas law requires that it be construed as a lien.

11.     Third, the Court's conclusion produces an inequitable result.  Section 541(a)(6) of the Bankruptcy Code and the Texas law presumption against absolute assignments of rents are specifically designed to *prevent* rulings based solely on linguistic technicalities. Moreover, this Court's conclusion has the practical effect of denying Chapter 11 relief to all debtors who rely on rents as their principal source of income, as mortgage lenders routinely place such language in their loan documents. Because Section 10.1 of the Deed of Trust constitutes a "forfeiture clause," this Court should not have enforced that provision if the document, read as a whole, could be construed in any other way.

## II.

## ARGUMENT & AUTHORITIES

**A.     SECTION 541(a)(6) MAKES POST-PETITION RENTS PROPERTY OF THE ESTATE AND SUBJECT TO USE AS CASH COLLATERAL REGARDLESS OF WHETHER RENTS HAVE BEEN ABSOLUTELY ASSIGNED PREPETITION.**

12.     The commencement of the Debtor's Chapter 11 case created a bankruptcy estate comprised of the property described in § 541(a) of the Bankruptcy Code, which includes

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 4

"[p]roceeds, product, offspring, _**rents**_, or profits _**of or from property of the estate**_." 11 U.S.C. §

541(a)(6) (emphasis added). The parties do not dispute that Fenton Centre is property of the

estate. Nor do the parties dispute that the rents at issue come from Fenton Centre. Thus, the

rents are undoubtedly "of or from property of the estate," which, in turn, makes them property of

the estate under § 541(a)(6). Notably, the statute is not limited to rents "owned by the Debtor" or

"controlled by the Debtor" or "in possession of the Debtor." Section 541(a)(6) makes no

exception for rents subject to a prepetition assignment—absolute or otherwise. The absence of

any such exception in § 541(a)(6) reflects Congress's intent to place _all_ rents derived from estate

property—by whomever owned or held—into the bankruptcy estate. Indeed, without this

provision, few Debtors that rely on rents for their primary source of income would be able to

reorganize under Chapter 11, because all or nearly all mortgage lenders place absolute

assignment clauses in their loan documents. For this reason, Congress chose to draft the

language of § 541(a)(6) broadly. This court must follow § 541(a)(6)'s unambiguous statutory

directive unless it leads to an absurd result. _United States v. Ron pair Enters., Inc._, 489 U.S. 235,

242 (1989). There is nothing absurd about the Debtor using rents derived from property of the

estate to maintain property of the estate, including the lender's collateral.

13.    At least three bankruptcy courts—two of which sit in Texas—have held that the

plain language of § 541(a)(6), when read alongside § 552(b) and § 363 of the Bankruptcy Code,

creates a statutory framework that allows a debtor to use post-petition rents as cash collateral for

the benefit of the estate. The Bankruptcy Court for the Southern District of Texas has twice held

that notwithstanding an absolute assignment of rents, "Section 541(a)(6) . . . enables debtors to

use post-petition rents to increase the value of the estate, instead of simply applying them to pay

creditors or turning them immediately over to assignees. This structure comports with the twin

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 5**

goals of bankruptcy, which are (1) permitting the debtor to obtain a fresh start, and (2) ensuring that claims are paid." *In re Las Torres Development, L.L.C.*, 408 B.R. 876, 886 (Bankr. S.D. Tex. 2009) (Bohm, J.); *see also In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009) (Isgur, J.).

14.     The Honorable Marvin P. Isgur, sitting for the Bankruptcy Court for the Southern District of Texas, engaged in a thoughtful analysis of this issue in *In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009).   Judge Isgur reviewed § 541(a)(6), alongside various other sections of the code, and concluded as follows:

> A review of pertinent sections of the Bankruptcy Code demonstrates that Congress created a wholly rational structure for resolving disputes involving post-petition rents:
>
> • Section 541(a)(6) makes post-petition rents property of the estate;
>
> • Section 552(b) extends a lender's pre-petition collateral interest in rents to rents that are collected post-petition; and
>
> • Section 363 mandates that a trustee or debtor-in-possession provide adequate protection before the rents can be utilized by the estate.
>
> This carefully crafted statutory framework promotes the salutary goal of allowing an estate to maintain its assets, which enhances the likelihood of a successful reorganization.

*Id.* at 624.  Judge Isgur further reasoned that, as a matter of policy, "Section 541(a)(6)'s inclusion of post-petition rents within property of the estate also limits the ability of a mortgagee to 'choke' the debtor out of chapter 11. Assuming that debtors-in-possession continue to generate income despite the inefficient incentives discussed directly above, the prospects for reorganization would remain dim if the rents were paid to the mortgagee instead of the estate." *Id.* at 626.

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 6**

15.     The Honorable Jeff Bohm, sitting for the court in *Las Torres*, reached the same conclusion as Judge Isgur in *Amaravathi*, holding that § 541(a)(6) makes post-petition rents property of the estate, regardless of whether they are subject to a prepetition assignment. *In re Las Torres Development*, 408 B.R. at 886.  Additionally, Judge Bohm went one step further, concluding that even if § 541(a)(6) did not exist, post-petition rents are also property of the estate pursuant to § 541(a)(1), which encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  The *Las Torres* court reasoned that even though a debtor may have a prepetition contractual obligation to assign rents, that debtor nonetheless has a conceivable interest in the rents sufficient to make them property of the estate.  *Las Torres Development*, 408 B.R. at 887 ("[E]ven if § 541(a)(6) does not place post-petition rents from estate property in the debtor's bankruptcy estate, the debtor nonetheless retains some minimal interest in the rents sufficient to make those rents 'property of the estate' under § 541(a)(1).").

16.     These opinions are not confined to Texas bankruptcy courts.  Just last year, the Bankruptcy Court for the District of Kansas reached the following conclusion regarding the effect of § 541(a)(6):

> There is no question that the real estate in this case is property of the bankruptcy estate. CW does not contest this fact. Therefore, under the clear, unambiguous language of § 541(a)(6), any rents derived from that property also constitute property of the bankruptcy estate as a matter of federal bankruptcy law. Contrary to the holding of *Butner*, which was decided prior to the enactment of § 541(a)(6), there is no need to turn to state law for resolution of this issue. Congress, in enacting § 541(a)(6), defined the treatment of rents in this case, and that statute brings post-petition rents into the bankruptcy estate, effectively preempting any state law that might provide for different treatment. Thus, even if the Court had found that Kansas law transferred complete legal title to the rents to CW, § 541(a)(6) would still operate to bring those rents into the bankruptcy estate.

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 7

*In re Bryant Manor, LLC*, 422 B.R. 278, 288-89 (Bankr. D. Kan. 2010). The reasoning behind these bankruptcy court decisions is sound. The United States Supreme Court's *Butner* decision held that state law governs parties' rights to rents in bankruptcy because, at the time *Butner* was decided, the Bankruptcy Act did not preempt those rights. *Butner v. United States*, 440 U.S. 48 (1979). However, as Judge Isgur and the Kansas bankruptcy court point out, soon after *Butner* was decided, Congress enacted § 541(a)(6), which preempts parties' state law rights to rents in the bankruptcy arena. *In re Amaravathi Ltd. P'ship*, 416 B.R. at 625; *Bryant Manor, LLC*, 422 B.R. at 288-89.

17.     This Court's Order relies, to some degree, on the Fifth Circuit's opinion in *FDIC v. Int'l Prop. Mgmt., Inc.*, 929 F.2d 1033 (5th Cir. 1991). However *International Property Management* was **not a bankruptcy case**. As discussed above, § 541(a)(6) of the Bankruptcy Code preempts a mortgage lender's state law rights under a purported absolute assignment of rents. *Amaravathi Ltd. P'ship*, 416 B.R. at 625 ("Given [Congress's] broad Constitutional powers, it is no surprise that the *Butner* Court recognized Congress's ability to supersede state law in the bankruptcy arena. *Butner*, 440 U.S. at 54, 99 S.Ct. 914. Congress's decision to do so in the case at hand was a wholly rational exercise of its expansive authority."); *see also In re Bryant Manor*, 422 B.R. at 288 ("*Butner*'s invitation to Congress to define [the parties' interests in rents] was accepted by the passage of § 541(a)(6), which clearly states that the 'proceeds, product, offspring, rents, or profits of or from property of the estate' are considered property of the bankruptcy estate."). Here, unlike *International Property Management*, the Court is bound by § 541(a)(6) of the Bankruptcy Code regardless of the language of NexBank's loan documents. Therefore, despite what the Deed of Trust says, post-petition rents derived from the Debtor's property are property of the estate and subject to use as cash collateral.

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 8

**B.**     **THIS COURT'S LEGAL CONCLUSIONS ARE CONTRARY TO TEXAS LAW.**

18.     Section 12.13 of the Deed of Trust states that the document shall be governed by and construed in accordance with the laws of the State of Texas.  Texas law required this Court to harmonize and give effect to all the provisions of the Deed of Trust so that none of the provisions is rendered meaningless. *See Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951); *Oryx Energy Co.*, 895 S.W.2d at 413. Texas law mandates that "[a]ll of the provisions must be considered with reference to the whole instrument, and ***no single provision taken alone will be given controlling effect***." *Cadle Co. v. Collin Creek Phase II Associates, Ltd.*, 998 S.W.2d 718, 723 (Tex. App.—Texarkana 1999) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).  Here, the Court construed the Deed of Trust in a way that gives effect to one sentence and renders the remaining forty (40) pages of text meaningless.  This construction of the Deed of Trust contradicts decades of Texas jurisprudence on the subject of contract interpretation.

19.     This Court's legal conclusion also does not comport with Texas's "strong presumption" that parties to an assignment of rents intended a collateral assignment. *FDIC v. Int'l Prop. Mgmt., Inc.*, 929 F.2d 1033, 1036 (5th Cir. 1991). Indeed, to overcome this presumption, Highland was required to show "especially clear evidence" that the parties intended an absolute assignment. *Id.*   When an assignment of rents states that it is given as "security," this language is strong evidence that it is intended as a mere security pledge. *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981).  As this Court pointed out in its letter ruling, the Deed of Trust contains contradictory language.  Paragraph 10.1 says that it is an absolute assignment of rents. Paragraph 9.1 says with equal clarity: "This Deed of Trust shall be construed as deed of trust on

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING**
**OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 9**

real property, and it shall also constitute and serve as a security agreement on all personal property," including "Leases and Rents."

1.     **The word "notwithstanding," buried in one paragraph of the Deed of Trust is not "especially clear evidence" that the parties' intended an absolute assignment of rents.**

20.     First, one word contained in one sentence of a forty (40) page Deed of Trust is not "especially clear evidence" sufficient to rebut Texas law's strong presumption against absolute assignments.   In its letter ruling, this Court expressly acknowledged that the contradictory language in NexBank's loan documents "would certainly require a finding that the parties' intent to create an absolute assignment was ambiguous and not clear."  This finding should have ended the inquiry under Texas law, specifically because at the cash collateral hearing Highland offered *no evidence of either party's intent regarding the meaning of the Deed of Trust*.   Nor could Highland have offered such evidence, as the witness called to testify on Highland's behalf, Kurt Daum, testified that he was not employed by NexBank or Highland when the loan documents were drafted, negotiated, or signed.  It is difficult to understand how Highland could have met its burden to come forward with "especially clear evidence" by simply offering up the loan documents, which this Court acknowledged are ambiguous.  NexBank's use of one "magic word," buried in one sentence of one paragraph, not set-off, not conspicuous, not initialed, and contradictory to the remaining forty pages of text, is not "especially clear evidence" of the parties' intent.

2.     **NexBank's purported absolute assignment is not automatic and self executing.**

21.     Second, Texas law provides that an absolute assignment of rents must be automatic and self-executing. *Taylor v. Brennan*, 621 S.W.2d 592, 594-95 (Tex. 1981); *see also Oryx Energy Company v. Union National Bank of Texas*, 895 S.W.2d 409 (Tex. App.—San

---

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING**
**OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 10**

Antonio 1995, writ denied).   If the mortgagee has to take any affirmative act to receive the rents, the purported absolute assignment creates a lien under Texas law. *Taylor*, 621 S.W.2d at 594-95. NexBank's right to receive the rents is not automatic and self-executing.   Rather it is conditional and may be exercised, not exercised, or cancelled at NexBank's sole discretion.   Section 10.1 of the Deed of Trust provides that "**Beneficiary's right as to the assignment shall be exercised only upon the occurrence of an Event of Default.**"   The Deed Trust is also replete with elections of remedies that NexBank may choose to exercise or not, or having chosen to exercise, discontinue.   For example, NexBank may exercise Uniform Commercial Code remedies, as set forth in Paragraph 9.3.   It may enter on to the Mortgaged Property and take possession, as set forth in Paragraph 7.2.  It may exercise any and all other rights, remedies, and recourses granted under the loan documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise, as set forth in Paragraph 7.9   Having chosen to exercise any of those of remedies, NexBank may discontinue exercising any previous remedy it has begun to exercise. Paragraph 7.14 provides:

> In case Beneficiary shall have proceeding to invoke any right, remedy, or recourse under the Loan Documents and shall thereafter elect to discontinue or abandon the same for any reason, Beneficiary shall have the unqualified right so to do and, in such event, Grantor and Beneficiary shall be restored to their former positions with respect to the indebtedness, the Obligations, the Loan Documents, the Mortgaged Property and otherwise, and the rights, remedies, recourses and power of the Beneficiary shall continue as if the same had never been invoked.

According to this language, NexBank may unilaterally cancel the effect of its absolute assignment and place the parties in the position they were in prior to default.   This assignment is anything but "absolute."

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 11**

### 3.     This Court's conclusion is directly at odds with applicable Texas case law construing nearly identical loan documents.

22.     Third, Texas state and bankruptcy courts have determined that loan documents with language identical or nearly identical to that of the Deed of Trust create a collateral assignment, rather than an absolute assignment, of rents. *See Oryx Energy Co. v. Union Nat'l Bank of Texas*, 895 S.W.2d 409 (Tex. App.—San Antonio, 1995); *In re Las Torres Development, L.L.C.*, 408 B.R. 876, 883 (Bankr. S.D. Tex. 2009) (Bohm, J.); *In re Amaravathi Ltd. P'ship*, 416 B.R. 618 (Bankr. S.D. Tex. 2009) (Isgur, J.); *In re Allen*, 357 B.R. 103 (Bankr. S.D. Tex. 2006) (Steen, J.).  Indeed, in *Oryx*, the Court of Appeals of San Antonio construed loan documents with the following provision:

> *Assignment of Rents, Profits, etc.* All of the rents, . . . profits, revenue, income, and other benefits derived from the mortgaged property or arising from the use or enjoyment of any portion thereof or from any lease or agreement pertaining thereto and liquidated damages following default under such leases, ... (hereinafter called the "Rents"), are hereby absolutely and unconditionally assigned to Beneficiary, to be applied by Beneficiary in payment of Indebtedness. ***Notwithstanding any provision of this Deed of Trust or any other Loan Instrument which might be construed to the contrary, the assignment in this Section is an absolute assignment and not merely a security interest***. Until terminated by the Beneficiary as herein provided, as a result of an Event of Default, Grantor shall have a license to collect and receive all Rents as trustee for the benefit of Beneficiary.

*Oryx Energy Co.*, 895 S.W.2d at 414 (emphasis added).  The court of appeals, relying on the Fifth Circuit's *International Property Management* decision, offered the following reasoning in support of its conclusion:

> In the present case, the deed of trust states that the assignment is "absolute" and goes on to say that the assignment is "not merely a security interest." The subordination agreement signed by Oryx refers to the assignment as an absolute assignment. This language would tend to establish that the intent of the parties was to create an absolute assignment.

> On the other hand, Article III of the deed of trust states that it is a security agreement. The deed of trust provides that the Bank cannot collect rents unless it

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 12

terminates Santa Fe's license to collect rents. When an assignment provides that the mortgagee cannot secure rents until it has taken certain action after the default, the clause will create a collateral assignment of rents. It is also important to note that the assignment of rents clause at issue in this case does not permit Oryx to make rent payments directly to the Bank. These facts would militate in favor of construing the assignment of rents in this deed of trust as collateral or a security interest.

*Id.* (internal citations omitted). The *Oryx* court construed the loan documents as a whole despite the word "notwithstanding" appearing in one sentence, and determined that they created a collateral assignment. The court of appeals relied heavily on the fact that the lender's "absolute" assignment could only be activated once the Debtor's revocable license terminated. *Id.* Because the same is true of NexBank's Deed of Trust in this case, the conclusion reached by this Court is directly at odds with—rather than governed by—*Oryx*.

23. Texas bankruptcy courts have generally reached the same result as the court of appeals in *Oryx*. In *In re Las Torres Development, L.L.C.*, 408 B.R. 876 (Bankr. S.D. Tex. 2009), the debtor's lender took a security interest in "Mortgaged Property," which its loan documents defined as "the Land, Building, Fixtures, Personalty, Rents and Contracts." *Id.* at 884. That lender's deed of trust also referred to "the Personalty, Fixtures, Leases and Rents" as "the Collateral" and stated that it was intended "to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations." *Id.* The Court concluded that "the explicit inclusion of the 'Rents' in the definition of 'Mortgaged Property' indicates a definite intent to create a security interests in the Rents." *Id.* The Court compared this language with other sections of the loan documents, which stated that "this Assignment provides for an absolute assignment of Rents, not a collateral assignment of Rents." *Id.* Another provision also stated that "this assignment is absolute, unconditional and immediately effective," and that "it shall never be necessary for Assignee to institute legal

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 13

proceedings of any kind to enforce the provisions of this Assignment." *Id.* Reading the loan documents as a whole, the Court determined that they were "patently ambiguous with respect to whether a collateral assignment or an absolute assignment of the Rents was intended" and looked to the maxims of contract construction to resolve the ambiguity. Because there, as here, the loan documents were drafted by the lender, and in light of the strong presumption against absolute assignments, the Court construed the loan documents against the drafter and found that the parties intended a collateral assignment of rents.[3] *Id.* at 884-85.

24.    The *Allen* case, decided by the Honorable Wesley Steen, sitting for the Bankruptcy Court for the Southern District of Texas, also involved loan documents with language substantially similar to the Deed of Trust. The loan documents in *Allen* pledged rents from the Debtor's property as collateral for a mortgage loan, but also contained the following language:

> Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.
>
> If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant . . .

---

[3] Highland contends that the *Las Torres* case is distinguishable from the case at bar because it "involved multiple loans." This is no distinguishing characteristic, as the language of the loan documents, rather than the number of loans, was the sole focus of the court. In fact, in *Las Torres*, the Court construed two separate loan documents—one deed of trust and one assignment of rents—which the Court explained should be read together as a single document. Here, we are dealing with only one document—the Deed of Trust—which itself contains all the contradictory language. Thus here the Court does not have to make the additional step of construing two documents as one.

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 14**

> Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of rents of the Property shall terminate when the debt secured by the Instrument is paid in full.

*In re Allen*, 357 B.R. at 111-12 (Bankr. S.D. Tex. 2006). The court found it important that the loan documents allowed the debtor to use rents "as trustee for the benefit of Lender *and Borrower*" and only allowed the lender to exercise its absolute assignment upon an event of default. Judge Steen reasoned that the "Debtor and Countrywide were equal beneficiaries of the trust in which Debtor was to hold the rents" and "[t]here is no limitation on Debtor's use of the funds prior to notice of default." *Id.* at 113. Relying on the Texas Supreme Court's decision in *Taylor*, the court concluded that "[b]ecause Debtor was a co-equal beneficiary before notice of the default, he had every reason to believe that he might rightfully apply the rentals to his own benefit. Therefore public policy requires interpretation of this document as effecting a collateral interest only." *Id.* Here, as in *Allen*, the Deed of Trust allows the Debtor to use rents freely prior to default, as a co-beneficiary. Section 10.1 states that "Beneficiary's rights as to the assignment **shall be exercised only upon the occurrence of an Event of Default**. Prior to the occurrence of an Event of Default, Grantor shall have a license to collect and receive all Rents as trustee for the benefit of Beneficiary **and Grantor**." (emphasis added). Thus, Judge Steen's reasoning in *Allen*, grounded in Texas law, is directly applicable to this case.

## C. Equity strongly favors the conclusion that NexBank holds a collateral assignment of rents.

25.     Texas courts have developed the "strong presumption" against absolute assignments of rents specifically to *prevent* debtors from being crippled solely by a lender's use of magic words. This policy consideration is even more vitally important in a bankruptcy

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 15

context.  If magic language could be employed to effectuate an absolute assignment of rents in a mortgage context, this result "*would effectively deny Chapter 11 relief to any debtor who is dependent on rents, such as hotels, apartment complexes, shopping centers, office buildings, senior residence facilities, and the like*."  *In re Bryant Manor, LLC*, 422 B.R. 278, 289 (Bankr. D. Kan. 2010) (emphasis added).  The Court's conclusion regarding the effect of one sentence of the Deed of Trust disregards the economic realities of the transaction between the Debtor and NexBank and creates a dangerous precedent for all businesses that rely on rents as a principal source of income.    Under this Court's analysis, a lender's inclusion of the word "notwithstanding" before an absolute assignment clause will effectively deny the borrower any hope of Chapter 11 relief.

26.    The result reached by this Court also blesses what amounts to an economic fiction.  Section 10.1 of the Deed of Trust purports to absolutely assign the Debtor's rents to its mortgage lender "to be applied by beneficiary in payment of the Indebtedness."  Without this latter clause, there would have been no consideration for the absolute assignment of the Debtor's rents, as earlier sections of the Deed of Trust already pledge rents as collateral for the mortgage loan.  The application of purportedly "absolutely" assigned rents to repayment of mortgage indebtedness is a logical fallacy.  For example, if Highland had collected $300,000 of the Debtor's rents pursuant to its "absolute" assignment and the next day the Debtor wrote a check for the full amount of the mortgage debt, Highland would be required to return the rents because there would be no indebtedness to which to apply them.  If the rents had been absolutely assigned, NexBank would have no obligation to apply them to the debt or to return them if the debt were repaid.  The Debtor's rents cannot be *both* collateral for its mortgage indebtedness *and also* absolutely assigned to the lender.  The reason Texas courts have developed the "strong

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 16

presumption" against absolute assignments is to prevent this kind of economic fiction.  As the

Fifth Circuit recognized in International Property Management:

> The concept of a present transfer of title to rents contingent upon default, as
> opposed to a security interest in the rents, is essentially a legal fiction. . . .
> Whatever terminology the court uses, . . . mortgagees employ such assignments to
> secure the debt, and all such assignments would be considered security interests
> under the Uniform Commercial Code, which treats all transfers intended to secure
> a debt as security interests despite their form.

*Int'l Prop. Mgmt.*, 929 F.2d at 1035; *see also In re Foundry of Barrington P'ship*, 129 B.R. 550,

557 (Bankr. N.D. Ill. 1991) ("[The lender] can call this arrangement an 'absolute assignment' or,

more appropriately, 'Mickey Mouse.' It's still a lien . . .").

27.     In the context of a mortgage loan, the absolute assignment is designed to give the

lender control over the debtor's income stream so that the debtor cannot terminate leases or

discount rents in exchange for quick cash after a default.  There are many reasons why mortgage

lenders do not want to exercise their purported assignments prior to default.  The lender is not in

the business of managing commercial real property.  The lender does not want to assume the

economic risk of default under the leases.  The lender does not want to transform its secured

claim into an equity interest.  In short, NexBank (and other mortgage lenders) draft their loan

documents this way because they do not want ownership—they want *control*.   Looking to

substance rather than form, Texas courts have refused to recognize an absolute assignment that

looks and acts and smells like a lien.  And bankruptcy courts are doubly hesitant to declare that

the lender "owns" its collateral because an absolute assignment cripples a debtor's ability to

reorganize and prevents other claims from being paid. NexBank's revocation of the Debtor's

license has the same effect as the repo-man repossessing a debtor's car prior to bankruptcy.  It

exercises NexBank's right to take possession of and control the rents.  However, like the repo-

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 17

man, NexBank can be required to relinquish possession of the rents for the benefit of the

Debtor's bankruptcy estate if its interest can be adequately protected.

28.    Not even Highland really believes it has an absolute assignment of the Debtor's

rents.  When Highland posted the Property for foreclosure three days before the cash collateral

hearing, it specifically sought to foreclose on its lien on *rents*.  Specifically, Highland's notice of

foreclosure, dated April 8, 2011 and admitted into evidence at the cash collateral hearing, recites

that, in addition to Highland's lien on the Debtor's real property, "further to secure the

Indebtedness, the Deed of trust also created a lien and security interest in favor of Mortgagee in

certain other collateral located on or related to the Land as more particularly described on

Exhibit B hereto."  A reading of Exhibit B to Highland's foreclosure notice reveals that Highland

seeks to foreclose its lien on the Debtor's rents.  Highland should not be allowed to play fast and

loose with the Court.

29.    Moreover, Section 10.1 of the Deed of Trust works a forfeiture, which must be

strictly construed against NexBank as a matter of equity.  Texas utilizes the classic definition of

a forfeiture, stated in Black's Law Dictionary, Seventh Edition, as "[t]he divestiture of property

without compensation," or "[t]he loss of a right, a privilege, or property because of a crime,

breach of obligation, or neglect of duty," or "[a] destruction or deprivation of some estate or right

because of a failure to perform some obligation or condition contained in a contract."  Texas law

utilizes a mixed system of law and equity.  Texas courts traditionally exercise their equitable

jurisdiction to emphasize the necessity that agreements be fair in text and fair in operation.  The

United States Bankruptcy Courts are courts of equity such that the ancient maxim endures:

equity abhors a forfeiture.

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING**
**OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 18**

30.    Texas courts have had long experience in the consideration of the equities as a guide to the non-enforceability of provisions determined to be within the scope of equitable resolution.  The once prevalent use of the land installment contract gave rise to judicial concern.  Sometimes known as a contract for deed, the essence of the deal gave the seller the right to cancel out of purchases upon a single act of default, whether early or very late in the process of payment for the land.  Too harsh, said the courts.  Early jurisprudence focused on purchasers who might have been less sophisticated than the sellers, but the law devolved into fundamental fairness.  The courts worked under the rule of reason—what was the default, how much was the prior investment, what was fair under the circumstances.  There should be no instanter forfeiture.  *See* Sherri R. Heyman & Benjamin A. Neil, *Land Installment Contracts: Legislative Swing in Seller's Favor is a Necessity in Today's Declining Housing Market*, OXFORD BUSINESS & ECONOMICS CONFERENCE PROGRAM (2008).

31.    In Texas, Courts will not give effect to a provision that affects a forfeiture "unless they are compelled to do so by language which can be construed in no other way." *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).  Section 10.1 is just such a clause, as it provides that in an event of default, NexBank may exercise its absolute assignment and divest the Debtor of its right to the rents.  Given the effect of the crucial sentence in Section 10.1, NexBank could have taken any number of measures to ensure the Debtor (or any reader) understood the gravity of that provision.  The forfeiture provision might have been initialed, it might have been placed in a separate paragraph titled "Possible Loss of Entire Investment," it might have been set-off in bold faced, capital letters, the latter of which NexBank clearly knew how to do.  *See* Deed of Trust Section 12.26 (requiring the Debtor to indemnify NexBank).

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 19**

32.     In sum, this Court's conclusion that the Deed of Trust creates an absolute assignment of rents based on one word, in one sentence, read in isolation, creates an unduly unfair result for this Debtor and creates a dangerous precedent for all businesses who rely on rental income—effectively denying such businesses any hope of Chapter 11 relief.   Section 541(a)(6) of the Bankruptcy Code, the strong presumption created by Texas law, and the enhanced evidentiary burden placed upon lenders claiming to have an absolute assignment of rents, were crafted to avoid the result reached by this Court.  The word "notwithstanding," alone, cannot be enough to defeat all of these protections.

WHEREFORE, the Debtor requests that the Court reconsider and withdraw its Order, enter a new order consistent with the relief sought herein, and order such other and further relief to which the Debtor is justly entitled.

May 3, 2011

Respectfully submitted,

**BARLOW, GARSEK & SIMON, L.L.P.**

/s/ Robert A. Simon

By:_____
        Henry W. Simon, Jr.
        Texas Bar No. 18394000
        Robert A. Simon
        Texas Bar No. 18390000
        Spencer D. Solomon
        Texas Bar No. 24066117

3815 Lisbon Street
Fort Worth, Texas 76107
Telephone:  (817) 731-4500
Facsimile:  (817) 731-6200
**Proposed Attorneys for FRE Real Estate, Inc.,
Debtor-in-Possession**

DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH

Page 20

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 3rd day of May, 2011, I served a true and correct copy of the foregoing to all parties receiving service via this Court's ECF notification system, and the parties listed below by email.

     Michael D. Warner
     COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
     301 Commerce Street, Suite 1700
     Fort Worth, Texas 76102
     Telephone: (817) 810-5250
     Facsimile: (817) 810-5255
     Email: mwarner@coleschotz.com

                             /s/ Robert A. Simon

                             _____

                               Robert A. Simon

**DEBTOR'S EMERGENCY MOTION FOR RECONSIDERATION OF COURT'S LETTER RULING
OF APRIL 29, 2011 AND ORDER ENTERED IN CONNECTION THEREWITH**

**Page 21**